PACE *v.* BURGESS, COLLECTOR.

1. The acts of Congress of July 20, 1868 (15 Stat. 157), and June 6, 1872 (17 id. 254), so far as they relate to snuff and tobacco intended for exportation, do not impose a tax or duty on exports within the meaning of that clause of the Constitution which declares that "no tax or duty shall be laid on articles exported from any State."

2. The stamp thereby required was a means devised for the prevention of fraud by separating and identifying the tobacco intended for exportation; thus relieving it from the taxation to which other tobacco was subjected.

3. The proper fees accruing in the due administration of the laws and regulations necessary for the protection of the government against imposition and frauds likely to be committed under the pretext of exportation, are, in no sense, a duty on exports. They are simply the compensation given for services properly rendered.

ERROR to the Circuit Court of the United States for the Eastern District of Virginia.

The question raised in this case was, whether the charge for the stamps required to be placed on packages of manufactured tobacco intended for exportation was a tax or duty on exports within the meaning of the constitutional prohibition.

*Mr. William P. Burwell* and *Mr. C. S. Stringfellow* for the plaintiff in error.

The constitutional provision that "no tax or duty shall be laid on articles exported from any State" absolutely prohibits Congress from imposing a pecuniary charge on them, whether it consists of a tax or duty, or is laid in the form of excises or imposts; and it is immaterial whether or not the professed object be to identify and separate the articles which are intended for export or to prevent fraud.

It has been insisted, however, that these charges are only for the regulation of trade, and are not a tax or duty for the purpose of revenue. This is entirely immaterial. In the constitutional convention, an amendment proposing to insert, after " duty " in the existing provision, the words " for the purpose of revenue," was rejected by a vote of eight States to three. Madison Debates, p. 456.

The asserted fact, that it was not the intention of Congress to give the character of an export tax to the money exacted by the laws in question, is entitled to no weight. Their constitu-

tionality cannot be determined by such intention. In *Brown v. Maryland*, 12 Wheat. 49, the articles imported were not taxed, but the importer was required to pay for a license to sell them. No one intimated that the legislature of Maryland designed to regulate the foreign commerce in which her citizens were engaged. It was contended, however, that the State had an undoubted right to tax the occupation of all persons within her limits; but this court held that this " was but varying the form without varying the substance of the thing prohibited." So, in this case, the purchase of the required revenue-stamps by the plaintiff in error at the time the officer made the entry is but the purchase of the privilege of exporting, and is equivalent to taking out a license and paying the United States therefor. The practical result is the same as if a tax or duty was specifically laid upon each exported package of manufactured tobacco.

*Almy* v. *State of California*, 24 How. 169, is another case bearing fully on the case at bar. This court held that the California statute was clearly within the terms of the prohibition on the States in regard to the subject of exports. If, therefore, it was an unconstitutional exercise of power in a State to levy a tax on a bill of lading, which the court regarded as an *inseparable incident* to a shipment abroad, how much more would it have regarded a stamp-tax laid directly on the article about to be exported! Chief Justice Taney stated, that, if the stamp had been required to be placed on the packages of gold dust, every one would see at a glance that such a tax would be repugnant to the prohibition. Yet that is exactly what the acts of Congress in question have required in regard to the exportation of this tobacco, although a much more stringent prohibition is imposed on that body than on the States.

The amount required to be paid for the stamp is wholly unimportant in determining the question submitted. It is one of constitutional power.

*Mr. Assistant Attorney-General Edwin B. Smith, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

The plaintiff in error brought this suit to recover from the

defendant (who was collector of internal revenue) the amount paid by plaintiff to defendant for stamps to be affixed, and which were affixed, pursuant to law, to packages of manufactured tobacco intended for exportation. The plaintiff was a manufacturer of tobacco in Richmond, Va.; and the payments were made from the years 1869 to 1873, inclusive, first under the act of July 20, 1868 (15 Stat. 157), and afterward under the act of June 6, 1872 (17 Stat. 254). By the act of 1868, an excise tax of thirty-two cents per pound was imposed on all manufactured tobacco, except smoking tobacco, on which the tax was sixteen cents per pound; and penalties and forfeitures were imposed for removing the manufactured article from the factory without being put up in proper packages, or without having the proper stamps affixed thereon and cancelled, to indicate the payment of the tax, and compliance with the law. From these provisions, tobacco intended for export was excepted; it being provided that such tobacco might be removed without payment of the tax, and without restriction as to the size of the packages: but it was enacted that " all tobacco and snuff intended for export, before being removed from the manufactory, shall have affixed to each package an engraved stamp indicative of such intention, to be provided and furnished to the several collectors as in the case of other stamps, and to be charged to them, and accounted for in the same manner ; and, for the expense attending the providing and affixing such stamps, twenty-five cents for each package so stamped should be paid to the collector on making the entry for such transportation." To facilitate the disposal of tobacco intended for exportation, the Commissioner of Internal Revenue was authorized to designate and establish, at any ports of entry in the United States, export bonded warehouses for the storage of such tobacco in bond, to be used exclusively for that purpose, and to be in charge of an internal-revenue storekeeper; in which warehouses, tobacco intended for exportation might be kept in bond until actually exported. The act of 1872 reduced the charge for the stamps to ten cents, and provided for a drawback of the excise-tax, if, after being paid, the owner should wish to export the article.

The plaintiff contends that the charge for the stamps required

to be placed on packages of manufactured tobacco intended for exportation was and is a duty on exports, within the meaning of that clause in the Constitution of the United States which declares that "no tax or duty shall be laid on articles exported from any State." But it is manifest that such was not its character or object. The stamp was intended for no other purpose than to separate and identify the tobacco which the manufacturer desired to export, and thereby, instead of taxing it, to relieve it from the taxation to which other tobacco was subjected. It was a means devised to prevent fraud, and secure the faithful carrying out of the declared intent with regard to the tobacco so marked. The payment of twenty-five cents or of ten cents for the stamp used was no more a tax on the export than was the fee for clearing the vessel in which it was transported, or for making out and certifying the manifest of the cargo. It bore no proportion whatever to the quantity or value of the package on which it was affixed. These were unlimited, except by the discretion of the exporter or the convenience of handling. The large amount paid for such stamps by the plaintiff only shows that he was carrying on an immense business.

The evidence given to show that the original cost of the stamps was never less than the amount paid for them by the manufacturers is entitled to very slight consideration. The cost of the paper, ink, and printing, formed but a small part of the expense of those arrangements which were necessary in order to give to the exporter the benefit of exemption from taxation, and at the same time to secure the necessary precautions against the perpetration of fraud. We know how next to impossible it is to prevent fraudulent practices wherever the internal revenue is concerned; and the pretext of intending to export such an article as manufactured tobacco would open the widest door to such practices, if the greatest strictness and precaution were not observed. The proper fees accruing in the due administration of the laws and regulations necessary to be observed to protect the government from imposition and fraud likely to be committed under pretence of exportation are in no sense a duty on exportation. They are simply the compensation given for services properly rendered. The rule by which they are estimated may be an arbitrary one; but an arbitrary

rule may be more convenient and less onerous than any other which can be adopted. . The point to guard against is, the imposition of a duty under the pretext of fixing a fee. In the case under consideration, having due regard to that latitude of discretion which the legislature is entitled to exercise in the selection of the means for attaining a constitutional object, we cannot say that the charge imposed is excessive, or that it amounts to an infringement of the constitutional provision referred to. We cannot say that it is a tax or duty instead of what it purports to be, a fee or charge, for the employment of that instrumentality which the circumstances of the case render necessary for the protection of the government.

One cause of difficulty in the case arises from the use of stamps as one of the means of segregating and identifying the property intended to be exported. It is the. form in which many taxes and duties are imposed and liquidated; stamps being seldom used, except for the purpose of levying a duty or tax. But we must regard things rather than names. A stamp may be used, and, in the case before us, we think it is used, for quite a different purpose from that of imposing a tax or duty: indeed, it is used for the very contrary purpose, — that of securing exemption from a tax or duty. The stamps required by recent laws to be affixed to all agreements, documents, and papers, and to different articles of manufacture, were really and in truth taxes and duties, or evidences of the payment of taxes and duties, and were intended as such. The stamp required to be placed on gold-dust exported from California by a law of that State was clearly an export tax, as this court decided in the case of *Almy* v. *The State of California*, 24 How. 169. In all such cases, no one could entertain a reasonable doubt on the subject. The present case is different, and must be judged by its own circumstances. The sense and reason of the thing will generally determine the character of every case that can arise.

The court being of opinion that the charge for the stamps in this case was not a. tax or duty within the meaning of the clause of the Constitution referred to, it is unnecessary to examine the other questions that were discussed in the argument of the cause.                    *Judgment affirmed.*