## TURPIN & Another v. BURGESS, Collector.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

Argued March 18, 1886.—Decided April 5, 1886.

The exportation stamp required to be affixed to every package of tobacco intended for exportation, before its removal from the factory, again declared constitutional, and the decision in *Pace v. Burgess,* 92 U. S. 372, reaffirmed.

An excise laid on tobacco, before its removal from the factory, is not a duty on "exports," or "on articles exported," within the prohibition of the Constitution, even though the tobacco be intended for exportation. The case of *Coe v. Errol,* 116 U. S. 517, cited and applied.

The case is stated in the opinion of the court.

*Mr. Charles S. Stringfellow* for plaintiffs in error.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This suit was brought to recover from the Internal Revenue collector of the third district of Virginia the amount paid by the plaintiffs from 1869 to 1872, inclusive, for stamps affixed to certain cases of tobacco manufactured by them and intended for exportation. The sum paid for the stamps was twenty-five

cents each. The ground of action relied on by the plaintiffs is, that the tax was unconstitutional, being, as contended, repugnant to that clause of the Constitution which declares that "no tax or duty shall be laid on articles exported from any State." The stamps were required to be affixed by the act of July 20, 1868, 15 Stat. 157. By this act an excise tax of 32 cents per pound was imposed on all manufactured tobacco, except smoking tobacco, on which the tax was 16 cents per pound. This tax was required to be paid by purchasing stamps to be affixed to the packages before the tobacco was allowed to be removed from the manufactory; but tobacco intended for exportation was relieved from the payment of this tax by affixing to each package or box, of whatever size, before removal from the factory, a twenty-five cent stamp, engraved to indicate the intent to export the same. After being thus stamped, and giving bond according to the regulations of the Treasury Department, such tobacco might be removed to any export bonded warehouse at some port of entry, and there kept in bond until actually exported. In 1872 the price of the stamp was reduced to 10 cents; and the act was incorporated in this form in section 3385 of the Revised Statutes.

We had occasion to examine the very question raised in this case in *Pace* v. *Burgess*, reported in 92 U. S. 372, and were unanimously of opinion that the act requiring the exportation stamp complained of, was a valid and constitutional act. The reasons for that decision were given at length in the report of that case, and we see no occasion to modify the views then expressed. The finding of facts (so called), made by the court in the present case by consent of the parties (who waived a jury), does not change the character of the question. Every fact now found was assumed, or virtually involved, in the former case. But since that decision Congress has abolished all charge for the exportation stamp, by an act passed August 8, 1882, entitled "An Act to repeal so much of section 3385 of the Revised Statutes as imposes an export tax on tobacco." It is argued that the language of this title is a concession by Congress that the charge for the stamp was an export tax. This argument admits of several answers. The act was obtained in

the interest of the tobacco manufacturers, and was probably proposed by them, or by their counsel, and the expression referred to may have escaped the attention of the members. But, if it was intentionally used, it would only be the opinion of one Congress opposed to that of another; for, of course, it cannot be supposed that the Congress which passed the law regarded it as imposing a tax on exports. Besides, an expression of opinion on the part of Congress, however much to be respected, is not binding on us. The counsel for the plaintiff in this case asks us. to declare the law unconstitutional, and thereby to declare that the Congress which passed it was mistaken in its opinion.

With the action of Congress in abolishing the charge for the stamp we have nothing to do. That is a matter of pure legislative discretion, and has no bearing on the question.

We are referred to certain expressions in the opinion of the Court of Appeals of Virginia in the case of *Burwell* v. *Burgess*, 32 Gratt. 472, indicating that if it were an original question that court would find it difficult to hold that the money paid for the stamps was not a tax. Whilst entertaining a high respect for the opinions of that eminent court, we cannot surrender our own views on a question which it is our peculiar duty to decide.

There is another view of this subject, however, independent of the considerations which governed our former decision, which is equally decisive of this case. We have lately decided, in *Coe* v. *Errol*, 116 U. S. 517, that goods intended for exportation to another State are liable to taxation as part of the general mass of property of the State of their origin until actually started in course of transportation to the State of their destination, or delivered to a common carrier for that purpose, provided they are taxed in the usual way in which such property is taxed, and not taxed by reason or because of such exportation, or intended exportation, and that the carrying of them to and depositing them at a depot for the purpose of transportation is no part of that transportation. Now the constitutional prohibition against taxing exports is substantially the same when directed to the United States as when directed to a State. In

the one case the words are, " No tax or duty shall be laid on articles exported from any State." Art. 1, sec. 9, par. 5. In the other they are, " No State shall, without the consent of Congress, lay any imposts or duties on imports or exports." Art. 1, sec. 10, par. 2. The prohibition in both cases has reference to the imposition of duties on goods by reason or because of their exportation or intended exportation, or whilst they are being exported. That would be laying a tax or duty on exports, or on articles exported, within the meaning of the Constitution. But a general tax, laid on all property alike, and not levied on goods in course of exportation, nor because of their intended exportation, is not within the constitutional prohibition. How can the officers of the United States, or of the State, know that goods apparently part of the general mass, and not in course of exportation, will ever be exported? Will the mere word of the owner that they are intended for exportation make them exports? This cannot for a moment be contended. It would not be true, and would lead to the greatest frauds.

It is true, as was conceded in *Coe* v. *Errol,* that the prohibition to the States against laying duties on imports or exports related to imports from and exports to foreign countries; yet the decision in that case was based on the postulate that when such imposts or duties are laid on imports or exports from one State to another it amounts to a regulation of commerce among the States, and, therefore, is an invasion of the exclusive power of Congress. So that the analogy between the two cases holds good, and what would be constitutional or unconstitutional in the one case would be constitutional or unconstitutional in the other.

In the present case, the tax (if it was a tax) was laid upon the goods before they had left the factory. They were not in course of exportation; they might never be exported; whether they would be or not would depend altogether on the will of the manufacturer. Had the same excise which was laid upon all other tobacco manufactured by the plaintiffs been laid on the tobacco in question, they could not have complained. But it was not. A special indulgence was granted to them (in com-

mon with others), in reference to the particular tobacco which they declared it to be their intention to export. With regard to that, in order to identify it, and to protect the government from fraudulent practices, all that was required of the plaintiffs was to affix a 25 cent stamp of a peculiar design to each package, no matter how much it might contain, and enter into bond either to export it according to the declared intention, or to pay the regular tax, if it should not be exported. In this view of the case, the plaintiffs not only had no ground of complaint, but they were really the objects of favorable treatment on the part of the government, which, on the slight and easy conditions referred to, accepted their declared intention to export the tobacco in question, before it was commenced to be exported, or put in the way of exportation.

On both grounds we are satisfied that the plaintiffs are without any cause of action, and the judgment of the Circuit Court is

*Affirmed.*