THAMES & MERSEY MARINE INS. CO., Limited, v. UNITED STATES.

(District Court, S. D. New York. June 17, 1914.)

COMMERCE (§ 77*)—TAX ON EXPORTS—WAR REVENUE ACT—STAMP TAXES—INSURANCE POLICIES.

    War Revenue Act 1898 (Act June 13, 1898, c. 448, § 25, Schedule A, 30 Stat. 461), providing for a stamp tax on policies of insurance, in so far as it imposed such a tax on policies of marine insurance which were necessary incidents of the business of exporting, and themselves constituted exports by virtue of their being sent with other documents to foreign ports, was not a violation of Const. art. 1, § 9, providing that no tax or duty should be laid on articles exported from any state, etc.

    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 61–70; Dec. Dig. § 77.*]

Action by the Thames & Mersey Marine Insurance Company, Limited, against the United States. On demurrer to petition. Sustained.

See, also, 217 Fed. 685.

This case comes up on a demurrer to a petition, under the Tucker Act (Act March 3, 1887, c. 359, 24 Stat. 505 [U. S. Comp. St. 1901, p. 752]), to recover the sum of $5,500, alleged to have been illegally exacted from the petitioner for the payment of stamp taxes on policies of marine insurance underwritten by it. The tax was levied under the War Revenue Act of 1898, which provided that after July 1st of that year there should be levied in respect of the documents thereinafter mentioned taxes as set down in the several schedules. Schedule A provided: "Insurance (marine, inland, fire,): Each policy of insurance or other instrument, by whatever name the same shall be called, by which insurance shall be made or renewed upon property of any description (including rents or profits), whether against peril by sea * * * or other peril, made by any person, association, or corporation, upon the amount of the premium charged," etc. The theory of the complaint is that this act is unconstitutional because it violated section 9, article 1, of the Constitution: "No tax or duty shall be laid on articles exported from any state." This is the sole question which is raised by this demurrer, for, although the United States raises questions of the jurisdiction of this court under the Tucker Act, yet the decision of Judge Noyes in Hvoslet v. United States, 217 Fed. 680, is conceded to be conclusive in this court at this time. The petition alleges that the plaintiff affixed all the stamps in accordance with the law and the requirements of the Collector of Internal Revenue, and canceled them over a period of time therein stated. Each of the policies effected marine insurance of certain exported products or merchandise, during their transit by sea from the United States to various ports, and the products and merchandise so insured were actually exported from the United States to various ports. The policies themselves were required by the custom and usage of business in the export trade, and they accompanied drafts and bills of lading drawn by the exporter against his consignee.

Everett P. Wheeler, of New York City, for plaintiff.
Kenneth M. Spence, of New York City, for the United States.

HAND, District Judge (after stating the facts as above). The policies of marine insurance in this case may be viewed from two quite separate aspects: First, as necessary incidents of the business of exporting; and, second, as exports themselves, by virtue of the allegation that they were sent along with the bills of lading and the drafts to foreign ports. Fairbank v. United States, 181 U. S. 283, 21 Sup. Ct.

---

648, 45 L. Ed. 862, decided that a tax on a bill of lading was within the prohibition, and the same with respect to manifests was conceded in United States v. N. Y. & Cuba Mail S. S. Co., 200 U. S. 488, 26 Sup. Ct. 327, 50 L. Ed. 569. In Judge Noyes' decision the same ruling was applied to charter parties. Almy v. California, 24 How. 169, 16 L. Ed. 644, applied the same rule to the taxation by a state of bills of lading of gold and silver exported from the state. These cases extend the meaning of the clause beyond the taxation of the exported goods themselves, to the documents which contain the contracts of carriage or the evidence that they are being carried. A marine policy is neither of these; it is a contract to pay a sum of money in the event of their loss, and does not concern their carriage in any respect, except that it presupposes that the exportation will take place. The true rule seems to me to be that the taxation of only such contracts is forbidden as involve in their performance some part of the movement of the exports out of the country, or of such documents as record that movement. The goods themselves do not become exports until their movement begins, Cornell v. Coyne, 192 U. S. 418, 24 Sup. Ct. 383, 48 L. Ed. 504, and it would seem by analogy that documents recording transactions which touch them should not fall within the clause unless the recorded transactions were a part of the same movement, or at least called for it in their complete execution if they were promissory in character. I should regret to base the distinction upon whether the transaction directly or indirectly affected exportation, for that involves a kind of casuistry which generally proves very troublesome in application and conceals the real ground of the decisions.

Nor can I accept the test of whether the tax burdens exportation, provided that the burden is only a part of what goods of the same class bear while within the country. To this Cornell v. Coyne, supra, is a distinct answer, and shows that any language in Fairbank v. U. S., supra, to the contrary was not meant to apply universally. A tax upon articles generally, though some of them may be exported, may have a final economic incidence upon the export, but only along with the rest of its class, and is certainly not what the Constitution was aiming at. Whether such a tax as this, levied only upon policies insuring exports, would be within the clause is quite another matter. To impose burdens upon exports even in such a roundabout way which other goods do not bear may well be within the clause. Coe v. Errol, 116 U. S. 517, 526, 6 Sup. Ct. 475, 29 L. Ed. 715.

In passing I may state that I cannot regard the cases relied upon by the United States and holding that the usual insurance business is intrastate as at all in point. None of those cases involved the insurance of goods in interstate commerce, and Congress may well have control over such contracts. The grant of power over interstate commerce is not to be confused with the clause here in question.

There remains the question of whether the insurance policies as documents are themselves exports. This contention is answered by the second reason given for the decision in Turpin v. Burgess, 117 U. S. 504, 6 Sup. Ct. 835, 29 L. Ed. 988, and by the decision in Cornell v. Coyne, supra, holding that the eventual destination of goods did not make them exports until they began to move. In the case at bar,

though the policies were all along destined for export, the stamps were affixed before they were issued. After delivery, they were sent by the assured, along with the other documents, to foreign countries, but until that time they could, at any time, be recalled, and they remained a part of the general mass of goods in the country.

The demurrer is sustained, and unless the plaintiff amends within 10 days, judgment will be entered dismissing the complaint upon the merits.