**NATIONAL PAPER & TYPE CO. v. EDWARDS, Collector of Internal Revenue.**

(District Court, S. D. New York. June 1, 1923.)

Commerce ⬅➡77—Excise tax on corporations not unconstitutional as applied to exporting corporation; "tax on exports."

Revenue Act 1916, tit. 4, § 407 (Comp. St. § 5980a), and Revenue Act 1918, § 1000 (Comp. St. Ann. Supp. 1919, § 5980n), imposing excise taxes on corporations, measured by the fair value of their capital stock, as applied to a corporation engaged in the business of exporting goods from the United States for sale in foreign countries are not invalid, as imposing a tax on exports, in violation of Const. art. 1, § 9, cl. 5.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by the National Paper & Type Company against William H. Edwards, collector of Internal Revenue for the Second District of New York. On motion by defendant for judgment on the pleadings. Granted.

Lord, Day & Lord, of New York City, for plaintiff.
Wm. Hayward, U. S. Dist. Atty., of New York City, for defendant.

MACK, Circuit Judge. This is a suit to recover taxes paid under protest. The amended complaint sets forth two alleged causes of action. The first relates to a payment of $487.50 alleged to have been exacted under section 407 of title IV of the act of Congress approved September 8, 1916 (Comp. St. § 5980a); and the second relates to a payment of $581.50 alleged to have been exacted under section 1000 of title X of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 5980n). The pertinent provisions of the acts in question are set forth in the margin.[1] It is contended that the capital stock tax imposed by these acts is unconstitutional as applied to the plaintiff corporation, the business of which is confined to the exportation of goods from the United States to foreign countries and the sale of goods to export commission merchants in this country, with the intent and purpose that the same should be exported, and with the result that such goods are in fact exported. It is alleged that the tax as applied to the plaintiff corporation is a tax on exports, prohibited by article 1, section 9, clause 5, of the Constitution. The defendant moves for judgment on the pleadings on the ground that the facts alleged are not sufficient to constitute a cause of action.

The tax in question is in form an excise tax on the privilege of doing business as a corporation, measured by the fair average value of the

[1] Sec. 407. That on and after January 1, 1917, special taxes shall be, and hereby are, imposed annually, as follows that is to say:

Every corporation, joint-stock company, or association, now or hereafter organized in the United States for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States, * * * shall pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint-stock company or association, or insurance company, equivalent to 50 cents for each $1,000 of the fair value of its capital stock and in estimating the value of capital stock, the surplus and undivided profits shall be included.

Sec. 1000. (a) That on and after July 1, 1918, in lieu of the tax imposed by the first subdivision of section 407 of the Revenue Act of 1916—

(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included;

(2) Every foreign corporation shall pay annually a special excise tax with respect to carrying on or doing business in the United States, equivalent to $1 for each $1,000 of the average amount of capital employed in the transaction of its business in the United States during the preceding year ending June 30. * * *

(c) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or in the case of a foreign corporation not engaged in business in the United States) during the preceding year ending June 30, nor to any corporation enumerated in section 231.

capital stock of the corporation for the preceding year. Washington Water Power Co. v. United States, 56 Ct. Cl. 76; Flint v. Stone-Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. In Peck & Co. v. Lowe, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. Ed. 1049, the Supreme Court, in sustaining a federal tax on the net income of a domestic corporation derived from the business of shipping goods to foreign countries and there selling them, thus summarizes its previous decisions:

"The Constitution broadly empowers Congress not only 'to lay and collect taxes, duties, imposts and excises,' but also 'to regulate commerce with foreign nations.' So, if the prohibitory clause invoked by the plaintiff be not in the way, Congress undoubtedly has power to lay and collect such a tax as is here in question. That clause says, 'No tax or duty shall be laid on articles exported from any state.' Of course it qualifies and restricts the power to tax as broadly conferred. But to what extent? The decisions of this court answer that it excepts from the range of that power articles in course of exportation, Turpin v. Burgess, 117 U. S. 504, 507; the act or occupation of exporting, Brown v. Maryland, 12 Wheat. 419, 445; bills of lading for articles being exported, Fairbank v. United States, 181 U. S. 283; charter parties for the carriage of cargoes from state to foreign ports, United States v. Hvoslef, 237 U. S. 1; and policies of marine insurance on articles being exported—such insurance being uniformly regarded as 'an integral part of the exportation' and the policy as 'one of the ordinary shipping documents,' Thames & Mersey Insurance Co. v. United States, 237 U. S. 19. In short, the court has interpreted the clause as meaning that exportation must be free from taxation, and therefore as requiring, 'not simply an omission of a tax upon the articles exported, but also a freedom from any tax which directly burdens the exportation.' Fairbank v. United States, supra, 181 U. S. 292, 293. And the court has indicated that, where the tax is not laid on the articles themselves while in course of exportation, the true test of its validity is whether it 'so directly and closely' bears on the 'process of exporting' as to be in substance a tax on the exportation. Thames & Mersey Insurance Co. v. United States, supra, 237 U. S. 25. In this view it has been held that the clause does not condemn or invalidate charges or taxes, not laid on property while being exported, merely because they affect exportation indirectly or remotely. Thus a charge for stamps which each package of manufactured tobacco, intended for export was required to bear before removal from the factory was upheld in Pace v. Burgess, 92 U. S. 372, and Turpin v. Burgess. 117 U. S. 504; and the application of a manufacturing tax on all filled cheese to cheese manufactured under contract for export and actually exported, was upheld in Cornell v. Coyne, 192 U. S. 418. In that case it was said (page 427): 'The true construction of the constitutional provision is that no burden by way of tax or duty can be cast upon the exportation of articles, and does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated. The exemption attaches to the export and not to the article before its exportation.'"

The Supreme Court then added that the income tax there in question was not laid on articles in the course of transportation, or anything which inherently or by usage is embraced in transportation or any of its processes. It was a tax laid generally on net income. While it could not be applied to any income which Congress had no power to tax, it was both nominally and actually a general tax. It was not laid on income from exportation because of its source, or in a discriminatory way, but just as it was laid on other income; exportation was affected only indirectly and remotely. If articles manufactured and intended for export were subject to taxation under general laws up to the time they

were put in the course of exportation, the conclusion was unavoidable that the net income from the venture when completed was likewise subject to taxation under general laws.

The government contends that the first, as well as the second, tax was levied under section 1000 of the Revenue Act of '1918. But since no question is raised as to the amount of the tax, it is immaterial for the purposes of the present suit whether the tax was imposed under the Revenue Act of 1916 or 1918. In a companion case, United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, wherein the power of a state under a general income law to include income derived from transactions in interstate commerce was sustained, the Supreme Court stated:

"It is settled that a state may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. Thus, it was declared in Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 695, 696: 'It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce and can not be sustained. But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchises within the state, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the state (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes.'

"Again, in Atlantic & Pacific Telegraph Co. v. Philadelphia, 190 U. S. 160, 163, the court upon a review of numerous previous cases laid down certain propositions as established, among them these: (a) That the immunity of an individual or corporation engaged in interstate commerce from state regulation does not prevent a state from imposing ordinary property taxes upon property having a situs within its territory and employed in interstate commerce; and (b) that the franchise of a corporation, although that franchise be the business of interstate commerce, is, as a part of its property, subject to state taxation, provided at least the franchise be not derived from the United States. See, also, St. Louis Southwestern Ry. Co. v. Arkansas, 235 U. S. 350, 365.

"Yet it is obvious that taxes imposed upon property or franchises employed in interstate commerce must be paid from the net returns of such commerce, and diminish them in the same sense that they are diminished by a tax imposed upon the net returns themselves.

"The distinction between direct and indirect burdens, with particular reference to a comparison between a tax upon the gross returns of carriers in interstate commerce and a general income tax imposed upon all inhabitants incidentally affecting carriers engaged in such commerce, was the subject of consideration in Philadelphia & Southern S. S. Co. v. Pennsylvania, 122 U. S. 326, 345, where the court, by Mr. Justice Bradley, said: "The corporate franchises, the property, the business, the income of corporations created by a state may undoubtedly be taxed by the state; but in imposing such taxes care should be taken not to interfere with or hamper, directly or by indirection, interstate or foreign commerce, or any other matter exclusively within the jurisdiction of the federal government.' " [2]

---

[2] A state, however, may not levy a direct tax on the gross receipts from interstate commerce, even though the tax is general, and applies as well to the

Under the principles above enunciated by the Supreme Court it would seem clear that the federal government may levy a general excise tax on the privilege of doing business in corporate form measured by the fair value of the capital stock and that the tax is not invalid in so far as or because the property or capital is employed in the export trade.

The plaintiff relies strongly upon the analogy afforded by cases like Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, and International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, wherein it was held that an excess tax levied by a state on the privilege of doing business within the state, measured by the entire capital of the corporation within and without the state, was under the circumstances of the particular case invalid because the purpose or necessary effect of the act was to burden interstate commerce or tax property beyond the jurisdiction of the state. Cf. Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127; Kansas City, etc., R. R. Co. v. Botkin, 240 U. S. 226, 227, 36 Sup. Ct. 261, 60 L. Ed. 617; Kansas City, etc., R. R. Co. v. Stiles, 242 U. S. 111, 37 Sup. Ct. 58, 61 L. Ed. 176.

To this contention it may be answered that not only is the power of the federal government with reference to foreign commerce not as limited as is the power of a state with reference to interstate commerce, but under the decisions a state may, in nondiscriminatory manner, tax property, tangible or intangible, employed in interstate commerce, so long as it does not reach out for more than its fair share. A state may thus tax that proportion of the entire capital of a corporation that its property or business in the state bears to all its property and business. St. Louis S. W. R. Co. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265; New York v. Roberts, 171 U. S. 658, 19 Sup. Ct. 70, 43 L. Ed. 323; Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; Western Union v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Postal Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 39 L. Ed. 311; Pittsburgh, C., C. & St. L. R. Co. v. Backus, 154 U. S. 429, 14 Sup. Ct. 1114, 38 L. Ed. 1031. Such analogy, therefore, as these cases afford, would seem to support the power of the federal government to levy a general excise tax on the privilege of doing business in corporate form measured by the fair value of the capital stock, without any exemption to any corporation by reason of its capital being employed in whole or in part in the export trade.

The defendant's motion for judgment on the pleadings will be granted.

internal commerce of the state. Crew Levick Co. v. Pennsylvania, 245 U. S. 295, 38 Sup. Ct. 126, 62 L. Ed. 295. Nor may the United States levy such a tax on export sales or the gross receipts therefrom; the tax is not cured by reason of the fact that it may be equally applicable to domestic commerce. A. G. Spalding & Bros. v. Edwards, collector, 43 Sup. Ct. 485, 67 L. Ed. ——, decided by the Supreme Court on April 23, 1923; T. D. 3476.