**DOSCHER et al. v. QUERY et al., South Carolina Tax Commission.**

**J. S. PINKUSSOHN CIGAR CO. v. SAME.**

District Court, E. D. South Carolina. August 15, 1927.

**1. Commerce ⬅️64—State occupation tax on dealers in tobacco product, to be paid by stamps affixed to packages before sale, held not unconstitutional as applied to products received or shipped in interstate commerce (Tax Act S. C., April 22, 1927 [35 St. at Large, p. 121]; Const. U. S. art. 1, § 8, cl. 3).**

Tax Act S. C. April 22, 1927 (35 St. at Large, p. 121), imposing an occupation tax on dealers in tobacco products in the state, to be paid by stamps affixed to the packages in which the product is retailed, and which makes no distinction between products manufactured in the state and those received in interstate or foreign commerce, but requires all to be stamped before sold by a manufacturer, jobber, wholesaler, or retailer doing business in the state, *held* not in violation of the commerce clause of the federal Constitution (article 1, § 8, cl. 3) as applied to products received or shipped by the dealer in interstate or foreign commerce.

**2. Licenses ⬅️7(1)—Provision requiring payment of occupation tax by stamps affixed to articles sold held valid.**

Assuming a state occupation or sales tax to be valid requirement that it be paid by affixing stamps to packages sold is a reasonable provision to prevent evasion of payment.

**3. Commerce ⬅️64—State occupation tax on dealers in tobacco products held not unconstitutional as applied to dealer whose stock is in part bought and sold in interstate commerce (Tax Act S. C. April 22, 1927 [35 St. at Large, p. 121]).**

A state occupation tax on dealers in tobacco products to be paid by stamps affixed to pack-

ages held for sale, *held* not invalid as a burden on interstate commerce as applied to a dealer, a part of whose stock is received in interstate commerce, and an undetermined part of which will, in the usual course of his business, be shipped into other states, and especially where the statute (Tax Act S. C. April 22, 1927 [35 St. at Large, p. 121]) provides for refund of the tax paid on products shipped to dealers without the state.

**4. Licenses ⬅️7(2)—South Carolina statute imposing occupation tax on dealers in tobacco products held not in violation of state Constitution (Tax Act S. C. April 22, 1927 [35 St. at Large, p. 121]; Const. S. C. art. 10, § 1).**

Tax Act S. C. April 22, 1927 (35 St. at Large, p. 121), imposing an occupation tax on dealers in tobacco products, to be paid by stamps affixed to the package in which the product is retailed, graduated according to the retail price, but providing that packages once stamped shall not require further stamps on resales, *held* not in violation of the rule of uniform taxation imposed by Const. S. C. art. 10, § 1.

**5. Courts ⬅️370—Federal courts are reluctant to declare state revenue statute in conflict with state Constitution before determination by state courts.**

Federal courts are reluctant to declare state revenue statute in conflict with state Constitution before question has been considered by state courts.

In Equity. Suits by Julius H. Doscher and another, partners trading as A. F. Doscher Sons, against W. G. Query and others, constituting The South Carolina Tax Commission, and by the J. S. Pinkussohn Cigar Company against the same. On motion for preliminary injunction. Denied.

Shimel & Rittenberg, J. D. E. Meyer, and Stoney & McGowan, all of Charleston, S. C., for complainants.

John M. Daniel, Atty. Gen., of South Carolina, Cordie Page, Asst. Atty. Gen., of South Carolina, and J. Fraser Lyon, of Columbia, S. C., for defendants.

Before PARKER and NORTHCOTT, Circuit Judges, and Ernest F. COCHRAN, District Judge.

PARKER, Circuit Judge. These are separate suits instituted against the South Carolina tax commission by A. F. Doscher Sons and J. S. Pinkussohn Cigar Company, dealers in tobacco products at Charleston, S. C., to enjoin the tax commission from enforcing against them the provisions of the South Carolina Tax Act of April 22, 1927 (35 St. at Large, p. 121), upon the ground that the sections of the act affecting them contravene provisions of the Constitution of the United States and of the state of South

Carolina.. Complainants have applied for interlocutory injunctions, and a court of three judges has been convened to hear their applications in accordance with section 266 of the Judicial Code (28 USCA § 380 [Comp. St. § 1243]). By consent of parties, both cases have been heard together, as they involve practically the same facts and the same points of law.

The statute in question is entitled "An act to raise revenue for the support of the state government." It creates for the state of South Carolina a system of excise and occupation taxes, including among others a tax upon dealers in tobacco products, which is graduated in accordance with the volume of their sales within the state, and is enforced by the requirement that stamps be affixed to the merchandise passing through their hands. The act provides for the licensing by the state tax commission of wholesale and retail dealers in cigars, cheroots, stogies, cigarettes, snuff, and smoking or chewing tobacco, and imposes upon these tobacco products handled by and while in possession of the licensed dealers taxes which are graduated in accordance with the weight and retail selling price of such products. Upon cigarettes this tax is one cent for each five cents of the price, upon smoking tobacco it is two cents for each ten cents, and upon cigars retailing for over three cents each it is $10 per thousand. The act further provides that the license taxes imposed shall be paid by affixing stamps to the merchandise subject thereto in such manner that removal will require continued application of steam or water; and as to the method and time of affixing stamps it contains the following provisions:

"*Method and Time of Affixing Stamps.*— In the case of. cigars, stogies, cheroots and chewing tobacco, the stamps shall be affixed to the box, or container, in which or from which normally sold at retail: Provided, that wholesalers and jobbers shall affix the required stamps within seventy-two (72) hours after such tobacco products are received by them: Provided, further, that any retailer shall have twenty-four (24) hours within which to affix the stamps after such tobacco products are received by him, or them: Provided, however, in the event any such tobacco products· are manufactured within the state of South Carolina, they shall be stamped by the manufacturer when and as sold: Provided, however, the tax commission may, in its discretion, where it is practical and reasonable for the enforcement of the collection of taxes provided hereunder, promulgate· such rules and regulations as to permit cigars, stogies and cheroots to remain unstamped in the hands of wholesalers and jobbers until the original case, or crate, is broken, unpacked or sold.

"In the case of cigarettes, snuff, smoking tobacco, chewing tobacco wrapped 'in packages of two (2) pounds or less, the stamps shall be affixed to each individual package by wholesalers and jobbers within seventy-two (72) hours after such tobacco products are received by them and by any retailer within twenty-four (24) hours of receipt by him or them of any such products: Provided, however, that such goods must be stamped before being sold: Provided, however, in the event any such tobacco products are manufactured within the state of South Carolina, they shall be stamped by the manufacturer when and as sold: Provided, that all retail dealers in tobacco products purchasing or receiving tobacco products from without the state, whether the same shall have been ordered through a wholesaler or jobber in this state and/or by drop shipment and/or otherwise, shall within five days after receipt of the same mail a duplicate invoice of all such purchases or receipts to the South Carolina tax commission.

\* \* \* \* \* \* \*

"It is the intent and purpose of this section to require all manufacturers within this state, wholesale dealers, jobbers, distributors and retail dealers, to affix the stamps provided for in this section to taxable commodities, but when the stamps have been affixed as required herein no further or other stamp shall be required under the provisions of this act regardless of how often such articles may be sold or resold within this state." Section 7 (35 St. at Large, pp. 131, 132).

Provision is made in the act for a discount of 5 per cent. on a purchase of stamps to the amount of over $50 and less than $100, and of 10 per cent. on purchases of more than $100; and it is the contention of defendant that this discount is allowed to compensate wholesalers and large dealers for the trouble and expense involved in unpacking, stamping and repacking the· goods, which is necessary in their case. The act provides also for consignment of stamps to dealers in tobacco products upon their executing a proper bond, so as to allow payment at intervals and only after the stamps have been used. Provision is also made for refunding the tax paid on goods sold and shipped to dealers in other states and to the United States government, upon the filing

of affidavits as to such sales, accompanied by certificates of the purchasers showing that the goods had been duly stamped. Forfeiture of goods not stamped in accordance with the provisions of the act is one of the penalties provided for its violation.

As stated above, complainants are engaged in the sale of tobacco products at Charleston. It appears that the larger part of their business at that point is retail, although they do some wholesale business there also. The greater part of the tobacco products which they handle are shipped to them from without the state of South Carolina in interstate commerce, and by far the larger part of their sales are to persons within the state. They allege that some of the goods which they sell are shipped to points without the state, but defendants aver that the volume of these shipments is comparatively insignificant. Upon the hearing before us, we made inquiry of counsel as to what proportion of complainants' sales were represented by such shipments, and, upon counsel stating that they were unable to give the figures as to this, we stated that they might file affidavit with regard thereto later. No such affidavit has been filed, and upon the evidence before us we conclude that the amount thus shipped is insignificant in comparison with the other business of complainants. The Pinkussohn Cigar Company alleges that it ships to consumers at various points of the United States packages of its "Potpourri" smoking tobacco, but this company has a place of business at Savannah, Ga., and it does not appear what part, if any, of its trade in Potpourri is supplied from Charleston. The case of Potpourri, introduced in evidence before the court, showed the address of Pinkussohn as Savannah.

The goods received by complainants from without the state are mingled with and become a part of their general stock in trade, and such shipments as are made by them to points beyond the state are made from this general stock. There is no showing that the goods are brought into the state to fill special orders of customers theretofore received. On the contrary, the evidence conclusively shows that complainants are not agents or brokers, but merchants, that the goods received by them in interstate commerce are goods bought in the ordinary course of trade, and that the sales which they make are made therefrom in the ordinary course of trade.

The tobacco products which are the subject of tax are received by complainants in boxes or containers of considerable size. To comply with the Tax Act, it is necessary to unpack them so as to affix the stamps to "the box or container in which or from which [they are] normally sold at retail." Of course, goods not intended for immediate retail sale must be repacked in the containers. This unpacking, stamping, and repacking involves some labor and trouble, but, in the case of most of the tobacco products handled by complainants, can be accomplished without substantial injury either to the goods or to the containers. A few brands of cigarettes and smoking tobacco handled by them, however, are packed in cartons which are wrapped in paraffin paper, and boxes of cigars of a few of the brands handled are similarly wrapped. In the case of these goods, it is necessary to remove or damage the paper covers to affix the stamps as required by the act, but it appears that to provide other covers in lieu of those destroyed or damaged is a matter of but small expense.

Complainants ask that the tax commission be enjoined from enforcing the statute against them, alleging: (1) That, so far as it affects tobacco products received from or shipped to other states, it violates the commerce clause of the Constitution, both in the imposition of the tax and in the requirement that the stamps be affixed to the packages in which or from which retail sales are to be made; (2) that it violates the due process and equal protection clauses of the fourteenth Amendment to the Constitution; and (3) that it violates article 10, § 1, of the Constitution of South Carolina, which requires that assessment and taxation be at a uniform and equal rate.

[1] On the first and main contention of complainants, we cannot see that the tax imposed by the statute can be said to be in any sense a tax or burden upon interstate commerce. It is an occupation or sales tax levied upon dealers engaged in the business of selling tobacco products within the state of South Carolina, and is assessed against the goods which they have in their possession for sale, so as to insure that the tax will be paid. The fact that a large part of the goods upon which the tax is assessed has been shipped from other states in interstate commerce is, we think, without significance; for these goods become subject to the tax only after their movement in interstate commerce has ended and after they have come to rest in the possession of dealers in South Carolina as a part of their stock in trade. The tax bears upon all dealers and all goods equally, and makes no discrimination against

goods from other states or in favor of goods produced within the state of South Carolina. Under such circumstances, it is well settled that the fact that the goods have been transported in interstate commerce to the place where they are taxed is no valid objection to the tax. Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095; Kehrer v. Stewart, 197 U. S. 60, 25 S. Ct. 403, 49 L. Ed. 663; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; Hinson v. Lott, 8 Wall. 148, 19 L. Ed. 387; Woodruff v. Parham, 8 Wall. 123, 19 L. Ed. 382.

Complainants rely upon the "original package" doctrine of Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678, and Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128; but the Supreme Court, in the recent case of Sonneborn Bros. v. Cureton, supra, after carefully reviewing the authorities and distinguishing and limiting the decisions in Standard Oil Co. v. Graves, 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662, Askren v. Continental Oil Co., 252 U. S. 444, 40 S. Ct. 355, 64 L. Ed. 654, Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139, and Texas Co. v. Brown, 258 U. S. 466, 42 S. Ct. 375, 66 L. Ed. 721, also relied upon by complainants, has definitely decided that the "original package" doctrine cannot be invoked to invalidate a state occupation tax levied on all dealers, even though measured by sales which include sales made in unbroken original packages. What was said by Chief Justice Taft, speaking for the court in that case, conclusively settles the point involved here. He said:

"The question we have to decide is whether oil transported by appellants from New York or elsewhere outside of Texas to their warerooms or warehouse in Texas, there held for sales in Texas in original packages of transportation, and subsequently sold and delivered in Texas in such original packages, may be made the basis of an occupation tax upon appellants, when the state tax applies to all wholesale dealers in oil engaged in making sales and delivery in Texas. Our conclusion must depend on the answer to the question: Is this a regulation of, or a burden upon, interstate commerce? We think it is neither. The oil had come to a state of rest in the warehouse of the appellants and had become a part of their stock with which they proposed to do business as wholesale dealers in the State. The interstate transportation was at an end, and whether in the original packages or not, a state tax upon the oil as property or upon its sale in the State, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject. * * * Without questioning the reasoning used to reach the conclusion in Leisy v. Hardin, it is enough to point out the radical difference between state legislation preventing any sale at all accompanied by forfeiture of the merchandise, and a provision for an occupation tax applicable to all sales of such merchandise whether domestic or brought from another State. The one plainly interferes with or destroys the commerce, the other merely puts the merchandise on an equality with all other merchandise in the State and constitutes no real hinderance to introducing the merchandise into the State for sale upon the basis of equal competition."

[2] Complainants contend, however, that, even if the tax itself be valid, the requirement of the statute that stamps for the amount of the tax be affixed to the package in or from which the goods are sold at retail is a burden upon interstate commerce, and therefore void. But, as pointed out above, the interstate commerce in the property which is the subject of the tax has ended, and the stamping is but an incident in the collection of a tax which the state has the right to collect. While the unpacking, stamping, and repacking undoubtedly involve some trouble and expense, the requirement that the stamps be affixed to the packages in or from which retail sales are made is a reasonable requirement, and one necessary to prevent frauds upon the revenue; and, if it be lawful for the state to collect the tax, we see no reason why it may not require the affixing of the stamps to make the tax effective. The labor and expense involved in unpacking, stamping, and repacking, even including the furnishing of paraffin paper to replace that destroyed in the case of goods so wrapped, is but a minor item compared with the amount of the tax itself.

No case has been cited to sustain the proposition that the requirement as to stamping is void, even though the tax be valid, and we know of none. On the contrary, it would seem clear that, granting the tax itself to be within the taxing power of the state, the state has the power to adopt any reasonable regulation to prevent evasion thereof. Even where goods are actually in interstate commerce, a state, in the exercise of its police power, may subject them to its

inspection laws and may require the payment of inspection fees (Patapsco Guano Co. v. North Carolina, 171 U. S. 345, 18 S. Ct. 862, 43 L. Ed. 191; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197), and may even require that they be carried to a state warehouse for inspection (Turner v. State of Maryland, 107 U. S. 38, 2 S. Ct. 44, 27 L. Ed. 370). A fortiori, the fact that goods have moved in interstate commerce before coming to rest within the state cannot be invoked to invalidate a reasonable requirement as to stamping to prevent evasion of a tax which the state has a right to impose in the exercise of its taxing power. The Constitution has expressly denied to Congress the power to tax exports, and yet the right to require of goods intended for export that they be so stamped as to guard against frauds on the revenue has been upheld. Pace v. Burgess, 92 U. S. 372, 23 L. Ed. 657; Turpin v. Burgess, 117 U. S. 504, 6 S. Ct. 835, 29 L. Ed. 988.

It is contended that the requirement as to stamping discriminates against goods brought into the state; the argument being that, as domestic manufacturers are required by the act to stamp their products before sale, it is only goods brought into the state as to which stamping by the dealers is required. But the act requires stamping no matter where the goods are manufactured; and, if the manufacturer in the state stamps them before sale, it is a reasonable assumption that he will pass on to the purchaser the cost and expense of the stamping. On the other hand, there is nothing in the act to prevent the dealer who buys from outside the state having the stamps placed on the goods by the outside manufacturer before they are packed, if he desires to do so. The state cannot, of course, require the outside manufacturer to stamp the goods. It can and does require the domestic manufacturer to stamp goods of his manufacture before selling them in the state. The requirement that dealers stamp all goods not previously stamped which are received by them and made a part of their stock in trade merely places such goods on a parity with goods manufactured within the state, and is but a carrying out of the declared purpose of the act, which is "to require all manufacturers within this state, wholesale dealers, jobbers, distributors and retail dealers, to affix the stamps provided for in this section to taxable commodities, but when the stamps have been affixed as required herein no further or other stamp shall be required under the provisions of this act regardless of how often such articles may be sold or resold within this state."

The situation here presented is not unlike that which was before the Supreme Court in Hinson v. Lott, supra, 8 Wall. 148, 19 L. Ed. 387. In that case it appeared that the state of Alabama had levied a tax of fifty cents per gallon on all spirituous liquors manufactured within the state. A subsequent section of the act provided that dealers introducing such liquors into the state for sale should, before offering same for sale, pay a similar tax upon every gallon thereof. This tax upon liquors brought into the state was assailed upon the ground that it constituted a burden upon interstate commerce, but the court upheld it, saying:

"A tax is imposed by the previous sections of the same act of fifty cents per gallon on all whisky and all brandy from fruits manufactured in the state. In order to collect this tax, every distiller is compelled to take out a license and to make regular returns of the amount of distilled spirits manufactured by him. On this he pays fifty cents per gallon. So that when we come in the light of these earlier sections of the act, to examine the thirteenth, fourteenth, and fifteenth sections, it is found that no greater tax is laid on liquors brought into the state than on those manufactured within it. And it is clear that, whereas collecting the tax of the distiller was supposed to be the most expedient mode of securing its payment, as to liquors manufactured within the state, the tax on those who sold liquors brought in from other states was only the complementary provision necessary to make the tax equal on all liquors sold in the state. As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister states, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the state, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the states."

It may be argued that in Hinson v. Lott there was no requirement as to stamping, but we think that the principle is the same; for in the case at bar stamping is required in the case of goods manufactured within the state as well as in the case of goods brought in. The fact that some trouble arises where the goods are not stamped before packed is but an incident of the situation, which may be avoided by stamping before packing, and is in no sense a discrimination

against the goods of sister states, and lays no burden upon them which goods manufactured within the state are not required to bear.

[3] It is next argued that the act, as applied to complainants, is a burden upon interstate commerce, because a part of their business consists in selling and shipping goods to other states. It does not appear, however, that complainants ever have possession of goods as a mere break or incident of their interstate transportation, or that the tax will be collected from goods after their movement into other states has commenced. As we understand the position of complainants, it amounts to nothing more than that an undetermined and indeterminate part of their stock in trade is not subject to the tax imposed because in the natural course of trade it will be shipped in interstate commerce. But, just as the commerce clause will not protect property from taxation after its interstate journey has ended and it has come to rest and become a part of the general mass of property within the state, neither will that clause protect from taxation property that is still at rest and a part of such general mass of property, even though it be intended for export or shipment in interstate commerce, if the movement in foreign or interstate commerce be not actually commenced. Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 25; Coe v. Errol, 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715; Turpin v. Burgess, 117 U. S. 504, 6 S. Ct. 835, 29 L. Ed. 988; General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Bacon v. Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615. And this is true, notwithstanding the goods have been transported in interstate commerce to the place where they are sought to be taxed, and are intended for shipment into other states, if they have reached the destination of their first journey and are being held by the owner for disposition in the ordinary course of business, and the stoppage be not a mere temporary delay in transportation. American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; General Oil Co. v. Crain, supra; Bacon v. Illinois, supra; Champlain Realty Co. v. Town of Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195.

In Turpin v. Burgess, supra, the Supreme Court upheld a stamp tax placed on tobacco products intended for export. After pointing out the analogy between a tax on exports and a state tax on articles shipped in interstate commerce, the court said:

"But a general tax, laid on all property alike, and not levied on goods in course of exportation, nor because of their intended exportation, is not within the constitutional prohibition. How can the officers of the United States, or of the state, know that goods apparently part of the general mass, and not in course of exportation, will ever be exported? Will the mere word of the owner that they are intended for exportation make them exports? This cannot for a moment be contended. It would not be true, and would lead to the greatest frauds. * * * In the present case, the tax (if it was a tax) was laid upon the goods before they had left the factory. They were not in course of exportation; they might never be exported; whether they would be or not would depend altogether on the will of the manufacturer. *Had the same excise which was laid upon all other tobacco manufactured by the plaintiffs been laid on the tobacco in question, they could not have complained.*" (Italics ours.)

As to goods shipped to dealers out of the state (and this embraces all of complainants' out of state shipments except Pinkussohn's shipments of Potpourri smoking tobacco to consumers), there is in reality no tax imposed whatever. It is true that the entire stock in the possession of dealers is required to be stamped; but provision is made for refunding the tax paid on goods shipped to dealers out of the state, and, as provision is also made for consigning stamps to dealers to be paid for after they have been used, it results that no payment is in effect required for stamps placed on goods shipped out of the state, as the dealer can get credit for the stamps on the out of state shipments on his next settlement with the tax commission. The only burden in connection with the out of state shipments, therefore, is the attachment of the stamps, and the requirement that they be attached is a reasonable requirement to prevent fraudulent evasion of the act. If dealers could be excused from stamping a part of the stock in their possession, on the plea that it was intended for shipment out of the state, countless frauds on the revenue would result. The requirement that all goods be stamped, with provision for refund on out of state shipments, is, we think, a reasonable device for the enforcement of the act and the prevention of fraud. Pace v. Burgess, 92 U. S. 372, 23 L. Ed. 657; Turpin v. Burgess, supra, 117 U. S. 504, 6 S. Ct. 835, 29 L. Ed. 988.

But, quite apart from these considerations, we do not think that complainants have

made any such showing as to their shipments out of the state as would warrant the court in granting them injunctive relief. It appears that they are engaged in the retail sale of tobacco products, and whatever wholesale business they do is done in conjunction with their retail business. Defendants have filed affidavits that shipments by complainants to points beyond the state are insignificant in amount, and complainants have not met these affidavits or shown what percentage of their sales consists of shipments out of the state, even after the court made inquiry and granted permission to file affidavits as to this matter. Complainant Pinkussohn Cigar Company has much to say in general terms as to its shipments of Potpourri to consumers, but it seems that its principal place of business is at Savannah, Ga., and it does not appear what shipments it makes from Charleston or what relation these shipments bear to its other business. In the case of neither of complainants is it shown that the goods to be shipped out of the state are kept separate from goods intended for sale within the state, or that it would be possible to make such separation. Under such a shadowy showing, this court would certainly not be justified in enjoining the officials of a state from executing a state law enacted in the exercise of its taxing power. Such injunction should be granted only where it clearly appears either that the law itself violates the Constitution or that it is being enforced in such way as to deprive persons of substantial rights thereunder, and the burden of showing this rests upon those seeking injunctive relief.

The points raised under the Fourteenth Amendment have already been dealth with in effect by what has been said with reference to the points raised under the commerce clause. The claim under the due process clause is that the requirement as to stamping causes damage to the goods and containers as a result of the unpacking required. But, as we have seen, this requirement is a reasonable regulation to prevent fraudulent evasion of the tax. It can no more be considered a deprivation of property without due process than any other exercise of the taxing power. The contention that the goods are destroyed or greatly reduced in value is, we think, without foundation in fact. If they are repacked after being stamped, they sustain practically no damage, and all that is involved is labor and expense, trifling in comparison with the amount of the tax itself. The claim under the equal protection clause is that advantage is given those purchasing

from manufacturers within the state, in that the state manufacturers are required to affix stamps before sale. The point here involved is the same as that involved in the contention that there is a discrimination against the products of other states, and this we have already dealt with.

[4] Complainants contend further that the statute violates article 10, § 1, of the Constitution of the state of South Carolina, and that this court, having acquired jurisdiction under the allegations as to violation of the Constitution of the United States, should grant relief, even though complainants be entitled to it only under the Constitution of their own state. We do not think, however, that the Constitution of South Carolina is infringed. Article 10, § 1, upon which complainants rely, is as follows:

"*Taxation and Assessment.*—The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, the products of which alone shall be taxed; and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes: Provided, however, that the General Assembly may impose a capitation tax upon such domestic animals as from their nature and habits are destructive of other porperty: And provided, further, that the General Assembly may provide for a graduated tax on incomes, and for a graduated license on occupations and business."

It will be noted that the section relied on expressly authorizes graduated license taxes on occupations and business, and, if the tax in question be considered an occupation or business tax, graduation in accordance with sales would seem to be expressly authorized. If it be considered a tax on sales, there is nothing in the section of the Constitution to invalidate any of its provisions, as it is undoubtedly made at a uniform and equal rate, levying the same tax on all articles of merchandise of the same sort sold within the state. The idea that the rule of uniformity is violated because only one tax is imposed on each article and only one stamp is required to be placed on it, even though it may have been sold a number of times, is not well grounded. It is a matter of common knowledge that a tax of this sort is shifted from dealer to dealer and is ultimately paid by the consumer, and we can think of no better way

of securing uniformity in a sales tax than by imposing the tax on the article itself, as is in effect done in this case.

[5] The question here is very different from that involved in Standard Oil Co. v. Spartanburg, 66 S. C. 37, 44 S. E. 377, especially relied upon by complainants. There an ordinance of the city of Spartanburg imposed a flat license tax of $250 per year on dealers in oils, but exempted from paying the tax dealers handling oils on which the license had been paid. The Supreme Court of South Carolina held that the ordinance made an unreasonable classification, and was therefore void. But in that case the effect of the ordinance was to exempt from taxation dealers handling oils purchased from dealers who had themselves paid the flat license tax, the exemption applying not to the oil but to the dealer. Here no one is exempted from paying the tax imposed, but it is collected from the dealer or manufacturer who has the goods in possession prior to the first sale within the state. To provide that no one shall be required to pay an additional tax with respect to the sale of these particular goods, as to which we may safely assume that the tax paid is added to the price, is manifestly a very different thing from providing that retail dealers in oil shall be exempted from paying a flat annual license tax because they happen to purchase from a wholesaler who has paid the same tax. We have carefully examined the other South Carolina cases cited by complainants, but we do not think that they bear even remotely upon the point involved. The question as to whether the statute under consideration violates the Constitution of South Carolina has not been passed upon by the Supreme Court of that state; and federal courts are reluctant to adjudge a state statute to be in conflict with the state Constitution before that question has been considered by the state tribunals, especially where the statute is one affecting the revenues of the state. Michigan Cent. R. Co. v. Powers, 201 U. S. 245, 291, 26 S. Ct. 459, 50 L. Ed. 744; Coulter v. Louisville & N. R. Co., 196 U. S. 599, 609, 25 S. Ct. 342, 49 L. Ed. 615. They will not do so unless the case "imperatively demands such a decision." Louisville & N. R. Co. v. Garrett, 231 U. S. 298, 305, 34 S. Ct. 48, 51 (58 L. Ed. 229).

For the reasons stated, we do not think that complainants are entitled to the interlocutory injunction prayed, and same is accordingly denied.

Injunction denied.