TEXOMA NATURAL GAS CO. v. TERRELL et al.

CITIES SERVICE GAS CO. v. SAME.

Nos. 436, 437.

District Court, W. D. Texas, Austin Division.

Dec. 23, 1932.

Baker, Botts, Andrews & Wharton, of Houston, Tex., J. J. Hedrick, of Chicago, Ill., and Morgan, Culton, Morgan & Britain, of Amarillo, Tex., for Texoma Natural Gas Co.

Robert S. Sloan, of New York City, Jas. W. Finley, Hayes McCoy, and R. E. Cullison, all of Bartlesville, Okl., and Phillips, Trammell, Chizum, Price & Estes, of Ft. Worth, Tex., for Cities Service Gas Co.

James V. Allred, Atty. Gen., and Maurice Cheek, Asst. Atty. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and WEST and McMILLAN, District Judges.

HUTCHESON, Circuit Judge.

Plaintiffs are two of the pipe line companies operating in the West Panhandle gas field, on whose petition this court in June, 1932, restrained the defendants from requiring them to share their market with persons owning wells in the field having no market outlet. Texoma Natural Gas Co. v. Railroad Commission (D. C.) 59 F.(2d) 750.

These suits seek injunction against an order of the defendants, purporting to be an order of the commission, closing in all of plaintiffs' gas wells in an area defined in the order until a market outlet is provided for some of those same persons, and restricting the production from plaintiffs' wells in other parts of the field to 4 per cent. of their potential capacity.

It is alleged that the order was made for the purpose of compelling plaintiffs, by indirection, to do what this court had enjoined the defendants from directly compelling them to do, share their markets with the owners of wells having none. That it is invalid both because beyond the authority granted by the Legislature, and because beyond any authority which the Legislature could grant.

The order complained of was entered in the course, and as the result, of hearings upon the application of Henderson and other owners of wells without market outlet for their gas for light or fuel, for permits to use it for other purposes. The order when made purported to have been grounded on a choice made by the defendants between granting stripping permits, which use they found would be wasteful, and shutting down production from the field until the applicants for permits could obtain a market outlet for the use of their gas for light or fuel. This choice plaintiffs say is a choice between courses each equally unwarranted; each equally illegal. That the commission has no power to authorize the use of gas except for purposes nonwasteful. Henderson v. Railroad Commission (D. C.) 56 F.(2d) 218. That defendants having expressly found that the use of gas for stripping purposes would be a wasteful use, the commission could not authorize it, nor could defendants any more, by imposing upon them the drastic penalty of having their wells closed in, force plaintiffs to share their market with others.

The order, made after "public hearings with respect to waste of gas in the West Panhandle gas field, the control of production and transportation of gas there, the application of Hagy, Harrison and Marsh and others for stripping permits," recited: (1) The issuance of the injunction in the Common Purchaser Cases [Texoma Natural Gas Co. v. Railroad Commission], supra; (2) that pipe line companies controlling the market outlets for gas have refused to purchase or take any gas except from their own wells; (3) that there are in the field wells not producing for want of market outlet; (4) that producing wells in the same area are drawing gas from the lands on which these nonproducing wells are situated; (5) that, if the owners of such wells are restricted to using

their gas for light and fuel, appropriation of it by those having market outlets will result; (6) that owners of those wells have established that there is no reasonable prospect of finding a market for light and fuel, and, unless they are granted stripping permits, confiscation of their properties will result. There was a finding by defendants that the commission must, "if confiscation be prevented, either grant stripping permits permitting applicants to extract gasoline from the gas, with the consequent loss of the residue and tremendous physical waste, or else prevent drainage and resulting appropriation by closing down all wells within the area specified in the orders where drainage would be immediately affected, as in the delimited area, and by requiring ratable production from other wells in the field."

The order directed (1) that all gas wells in the delimited area be shut in until such time as the owners of wells in such area have a market which will insure ratable production and outlet; (2) that each well in the balance of the West Panhandle field be limited to a flow of not more than 4 per cent. of its potential capacity. It exempted from the shutin portion of the order wells in the field which were furnishing gas for light or fuel to nearby towns.

The District Judge granted the temporary restraining order pending hearing on the application for interlocutory injunction, and the matter stood for hearing before the statutory court on that application. That hearing developed the general situation in the field as to gas properties owned and operations conducted by the plaintiffs, the character of business they do, the markets they serve, the investments they have made, and the manner in which they supply the markets they take gas to, as it was developed in the hearings in the earlier cases. Texoma Natural Gas Co. v. Commission, supra.

In addition to the facts established there, this hearing established incontrovertibly, indeed the evidence is without conflict, that plaintiffs' properties were being operated in a wise, a prudent, and a skillful manner; that no waste was being committed by plaintiffs when the order was entered; that none had been or would be committed. It showed that no other field in Texas was subjected to the treatment to which the order complained of subjected plaintiffs, the uniform limitation on gas production in all fields before that order having been 25 per cent., and after that order, 25 per cent. in all fields except those directly affected by it.

It showed that the plaintiffs in the two suits own sixty-two wells in the shutdown area, and sixty-two in the 4 per cent. area; that under the order plaintiffs are limited in their takings from their wells to an amount less than one-half of the amount of their daily requirements for consumers in cities and towns in other states connected with their lines, and depending on them for their daily supply; that plaintiffs at the time of the order were not taking and that they had never taken any of the gas belonging to other persons, and more, that they have never taken the proportional part of the gas from the common gas pool which, if the gas were allocated to each owner in proportion to acreage and open flow, they would be entitled to take.

It established in the same incontrovertible way that the purpose and effect of the order was not to prevent or diminish waste, but to force plaintiffs to purchase gas from wells having no market outlet; that it has its entire spring in the desire of defendants to force plaintiffs to share their markets, and, in their belief, that the entry of this order would "hasten the day" when plaintiffs would yield to defendants' demands; that the theory advanced at this hearing that the commission had power to prevent plaintiffs from drawing any of their gas from the common reservoir as long as owners of other wells were unable, because of lack of market outlet, to draw from it, had been put forward only after and because of the injunction.

The evidence in short established that though in form the order was restrictive, it was in fact coercive, designed to operate in a penal way to force plaintiffs to purchase the gas which this court had found that the commission could not compel them to take under the mandate of the statutes.

Plaintiffs insist that, since it is plain that the defendants are undertaking to do deviously what they have been enjoined from directly doing, the order may not stand.

It has been often pointed out, this court has had occasion to declare it as to this commission, that it is not the motive or purpose informing and animating administrative bureaus, but the relation of what they do to the power they purport to exercise, which determines the validity or invalidity of their acts.[1] It is not sufficient then for plaintiffs to point to the fact that the endeavor of the defendants is, by shutting down their production, to

[1] MacMillan v. Railroad Commission (D. C.) 51 F. (2d) 400; People's Petroleum Producers v. Sterling (D. C.) 60 F.(2d) 1041.

compel plaintiffs to make terms with those for whose benefit the shutdown has been ordered. It must appear also that the defendants have no power to do the thing they are doing, either because the measures taken are not of the kind which the commission is authorized to employ, or because in degree they exceed what the public necessity requires.

Plaintiffs recognize this burden. They say that the purported order of the commission is wholly without authority of law; that it is merely the exercise by defendants of force majeure. That the statute under which they purport to act in terms limits the power of the commission to preventing waste of natural resources. That it directly declares that production may not be curtailed except where necessary to prevent waste. It provides that "nothing in this Act shall require the owner of any gas and/or oil well to curtail the production thereof unless the same is being operated in such manner as to constitute waste as herein defined or contributing to waste as herein defined." Acts Tex. 1931 (1st Called Sess.) c. 26, § 1 (Vernon's Ann. Civ. St. Tex. art. 6014).

They say, and the evidence sustains them, that the order was not designed to nor does it have the effect of preventing waste. Indeed, it is not claimed by the defendants here that the questioned order has relation to that power. Their claim of authority to make the order is put here upon the ground that, in the protection of the correlative rights of owners of gas in the field, the commission may prevent those having market outlet from taking their gas until owners of other wells drawing from the same reservoir are provided with a market for theirs.

Some of counsel for plaintiffs question whether the state has power, upon considerations of this kind, to control the right of owners of oil or gas wells to produce from their wells. Some recognize that it has. All insist that whether or not the state could so legislate, it has not only not done so, but has affirmatively withheld from the commission the power to limit production except upon considerations of waste. (Note 1, supra.)

We have held that, though in Texas it is a rule of property that one owns minerals in place just as he owns the land from which it is extracted (cf. Burnet v. Harmel, 53 S. Ct. 74, 77 L. Ed. ——) and a rule of law that each may take without accountability to his neighbor for so doing, except in extreme circumstances and under extreme conditions,[2] all of the oil or gas he can draw from his wells, these rules constitute no limitation on the power of the Legislature to enact laws conserving oil and gas, the natural resources of this state.[3] We have not had occasion to consider whether the existence of these rules of property would work a limitation upon the legislative power to control production, not in order to prevent waste of the state's resources, but to protect the mutual and correlative rights of owners against undue takings from a common source of supply. We find no occasion to consider it now; it does not arise in this case.

The Legislature of Texas, in the statutes on which the defendants rely, has not delegated to the commission any power to restrict production upon considerations having to do with the rights of owners to draw upon a common supply, and the extent to which they may do so. On the contrary, it has expressly withheld from it any power to limit production except upon considerations of physical waste. It has declared that no owner may have his production curtailed unless he is committing or contributing to waste. Besides, no case calling for the exercise of this power, if it existed, is made out here. Though the defendants do recite in the order that the shutting in of the wells in part of the territory, and the limitation of those in other parts of it to 4 per cent. of their capacity, is necessary to prevent the owners of wells having no market outlet from having their gas drained away, this finding is not only without evidence to support it, but it is directly in the face of the undisputed facts that plaintiffs are not even taking the proportion of gas which, on allocation, would be their due.

We held in the Common Purchaser Cases, though there was a statute purporting to authorize it, that the commission had no power to compel plaintiffs to purchase gas they did not need or require; no power to prevent them from carrying to the customers they had obligated themselves to serve the gas which having bought and paid for in place they owned. We enjoined the defendants from undertaking to do so. From that order, no appeal was taken.

Plaintiffs stand here in stronger case than they did there. Here, without a statute authorizing, indeed, in the face of a statute prohibiting, the curtailment of production, except to prevent waste of natural resources, and of an injunction restraining them from

---

[2] Comanche Duke Co. v. T. P. Coal & Oil Co. (Tex. Com. App.) 298 S. W. 554, 556.

[3] Henderson v. Comm. (D. C.) 56 F.(2d) 218; People's Petroleum Producers v. Sterling (D. C.) 60 F. (2d) 1041.

doing so, defendants are undertaking to impose upon plaintiffs' use of their gas the illegal condition that they share their facilities, without compensation therefor, with owners of other wells in the field. This is "running the public interest argument into the ground." Wolff v. Industrial Court, 262 U. S. 522, 43 S. Ct. 630, 634, 67 L. Ed. 1103, 27 A. L. R. 1280. It is a taking of the property of one to give it without compensation, not to the public, but to another. It is not due process; it is confiscation. Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; People's Petroleum Producers v. Smith (D. C.) 1 F. Supp. 361.

Let plaintiffs have their decree with costs. Pending its submission to and entry by the District Judge, the restraining order is continued in force.