**SNEED v. PHILLIPS PETROLEUM CO.**
**et al.**

**BRITAIN v. SHAMROCK OIL & GAS CO.**
**et al.**

**HENRY SCHAFER, Inc., v. HAGY et al.**
**Nos. 7548–7550.**

Circuit Court of Appeals, Fifth Circuit.

March 28, 1935.

HUTCHESON, Circuit Judge, dissenting.

———◆———

No. 7548:

H. L. Adkins and Chas. H. Keffer, both of Amarillo, Tex., for appellant.

Don Emery and R. K. Batten, both of Amarillo, Tex., and W. P. Z. German and Alvin F. Molony, both of Tulsa, Okl., for appellees.

No. 7549:

S. A. L. Morgan and D. H. Culton, both of Amarillo, Tex., for appellant.

Joseph B. Dooley and C. C. Small, both of Amarillo, Tex., and Maurice Cheek and Burney Braly, both of Fort Worth, Tex., for appellees.

No. 7550:

William Jarrell Smith, of Pampa, Tex., for appellant.

Joseph B. Dooley and C. C. Small, both of Amarillo, Tex., and Maurice Cheek, of Fort Worth, Tex., for appellees.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

These are appeals from orders dismissing, for want of equity, bills seeking injunctive relief. Each of the bills in these cases, though brought by a different plaintiff in relation to different properties, and charging different defendants, advances the same ideas, makes the same charges, asks the same relief. The general idea advanced is that adjoining owners and operators of gas lands·in a common pool, that is, one subject to common drainage, have an equity against each other to restrain the taking of gas from the pool for wasteful uses. The particular idea advanced in each bill is that by the Texas Conservation Laws the taking of gas to strip it for gasoline is a wasteful use, and that the plaintiff in each case has a right to restrain the defendants in each from doing so. The charges are that, though required by the act and by the Conservation Laws of Texas to close their wells until their gas may be used for light and fuel, defendants, in reliance upon invalid amendments to those laws, and upon permits of the Railroad Commission, the statutory conservation agent, issued under their purported authority, have opened their wells and are using their gas to strip gasoline from it, and blow the residue into the air, a process which avails of about 3 per cent. of the heat units and wastes the balance. The bills charge that this wasteful use is causing plaintiffs irreparable injury, in that the gas in the pool is being used up faster than it would be if used for light

and fuel, and particularly that it is causing the gas to migrate from plaintiffs' lands on to defendants', and into defendants' wells, to be wasted by being blown away, whereas but for such wasteful and unlawful uses it would remain in place to be utilized nonwastefully and in accordance with law. The relief the bills seek is injunctive, restraining defendants from flowing their wells except to utilize the gas for light or fuel.

After alleging, as to Sneed, that he owns the oil, gas, and other minerals subject to a gas lease, under 300 acres of land, from which it is alleged one of the defendants is taking gas for stripping, and also is the owner of 7,500 acres of land lying to the west, north, and south of this tract, all subject to leases; as to Britain, that he owns an undivided interest in minerals, subject to a gas lease, in approximately 6,000 acres of land; as to Schafer, Inc., that it owns gas and minerals under about 8,000 acres of land, and that all of these lands are located within the Panhandle Gas Reservoir, a huge body of land embracing approximately 1,-350,000 square miles, with a width of 10 to 15 miles, and a length of more than 125 miles, the bills launch into a vivid description of conditions and activities there. Concerning themselves not only with the particular actions of the defendants, and the effect of those actions on plaintiffs, but with the entire situation in the huge Panhandle field, its effect on and relation to the state's general policies of conservation, the bills present a graphic picture of alleged wasteful uses under purported legislative and Commission authority. The picture is so graphic as to general conditions and as to the general interests involved as almost to dwarf and make insignificant the private interests of plaintiffs, and the particular activities of defendants against which they ask relief. They allege that all of the lands in this reservoir are capable of producing gas, and that large portions of them are known to be productive of oil.[1] The bills allege that plaintiffs' lands are so situated on the structure that they are underlaid with formations capable of producing not only sweet gas in large quantities, but also great quantities of oil. That conditions in the industry have heretofore prevented the development of these lands, but in due course they will be developed and plaintiffs will realize large re-turns from the oil and gas under them, if they are developed in an orderly and lawful way. It is alleged that the reservoir originally contained 13,000,000,000,000 cubic feet of natural gas, and about 1,000,000,000 barrels of oil. That of the oil less than 200,-000,000 barrels have been produced down to the present date and that if the present rate of withdrawals of natural gas goes on, 400,-000,000 barrels of oil which could otherwise be recovered, will be lost to the owners. Of the gas originally contained in the field approximately 4,000,000,000,000 cubic feet, or one third of it, has already been produced, the greater part of it from localities wastefully developed for oil, producing numerous low pressure areas. That originally the reservoir pressure was about 430 pounds per square inch, but as the result of withdrawals the equilibrium of the pressure has been disturbed, and a gradual but steady migration from higher to lower areas has been going on, with the result of pulling down the reservoir pressure and reducing the volume of gas content in the formation. In many places, by reason of such withdrawals, the pressure is below 200 pounds. Of the total volume of gas withdrawn, more than threefourths of it has been produced in a ruthlessly wasteful manner and only a small portion produced for light and fuel. An enormous quantity of it has been produced and permitted to escape into the air from the mouths of wells. A substantial portion of it has been produced to strip it of its natural gas content and burn the residue into carbon black. The remainder, aggregating more than half of the total gas produced, has been wasted into the air after being stripped of its small natural gasoline content, less than 3 per cent. of the heat producing value of the gas. At the present time more than 1,600,000,000 cubic feet of gas is being produced daily, less than 400,000,000 of this for light and heat. Of the remainder four to over five hundred million is burned into carbon black after its small gasoline content has been extracted, more than one half, that is, 600,000,000 cubic feet is being stripped of its natural gasoline content and wasted into the air. "At the present rate of withdrawals the tremendous losses of natural gas and oil that will result from the wasteful dissipation of the natural gas contained in the reservoir will reach

---

[1] A description of this Panhandle field, particularly as concerns the oil bearing portion, and something of the history of the public litigation over the conservation of oil and gas it has given rise to may be found in Note to Danciger Oil & Ref. Co. v. Smith (D. C.) 4 F. Supp. 236, and in Canadian River Gas Co. v. Terrell (D. C.) 4 F. Supp. 222.

such staggering proportions as to amount to nothing less than a public calamity." That in a short time plaintiffs' lands will be drained of a large part of their gas; that the defendants, though they have already produced substantially all of the gas contained under their formations, are engaged in wasting the gas in the pool by stripping operations, drawing the gas from plaintiffs' lands into theirs.

Of the particular defendants it is alleged that defendant Phillips owns a lease on a 300-acre tract of plaintiff Sneed's land, and through two wells on it is producing gas in large quantities. Skelly owns a lease on land immediately east of plaintiff Sneed's lands, and is producing gas from wells on it. Several of these wells are located very close to his land. This gas, approximately 20,-000,000 cubic feet daily, is transported to a natural gasoline plant where its gasoline content, .29 gallon per thousand cubic feet, is taken out and the balance wasted. That, though he has been receiving royalty on this gas, these royalties are insignificant, besides, the gas withdrawals are endangering his oil recovery, and he is not willing for such wasteful uses to continue. Defendant Shamrock owns a lease on 80 acres, on which a well drilled at a point 770 yards from Britain's land, is producing 7,000,000 cubic feet of gas daily. Defendant Continental is the owner of a lease on 160 acres, on which it has drilled a well 440 yards from plaintiff Britain's land. This well is producing about 5,000,000 cubic feet. Schafer owns approximately 9,000 acres, which land has been partially though not fully, developed. Defendant Hagy and others have four gas wells, three each on 80 acres, and one on 160 acres. They are located near Schafer's land and so located that enormous quantities of gas have been drawn from plaintiff's lands to their wells.

Anticipating defendants' claim of authorization, plaintiffs allege that the defendants base their claim of right to use this gas on a proviso, added to article 6008 of the Revised Statutes of Texas, by an Act of the 43d Legislature, c. 100, § 1, reading: "In all common reservoirs or pools consisting of more than three hundred thousand (300,000) acres where gas is encountered for which there is no reasonable market for light or fuel available to the owner, the same may be utilized for other purposes, including the manufacture of natural gasoline, to the extent of twenty-five (25) per cent. of the open flow of the well producing such gas";

and on permits issued by the Railroad Commission of Texas, under a proviso added to article 6008 by an Act of the First Called Session of the same Legislature (chapter 88, § 1 [Vernon's Ann. Civ. St. Tex. art. 6008]), that: "The Commission may permit the use of gas from any well producing natural gas only for the purpose of being introduced into an oil or gas bearing stratum in order to maintain or increase the rock pressure or otherwise increase the ultimate recovery of oil or gas from such stratum and for any other purpose which under circumstances surrounding each particular case might be found by the Commission after hearing to be practical and conducive to the public welfare."

Plaintiffs deny the right of defendants to strip gas under the first proviso: (a) Because while purporting to be a general law, it is a local and special law, operating only in the Panhandle, and in violation of the state Constitution forbidding the passage of any local or special law regulating labor, trade, mining, and manufacture. (b) The proviso discriminates against the owners of natural gas in that reservoir by permitting wasteful uses there, while not permitting them elsewhere, and therefore is in violation of the Fourteenth Amendment. (c) It is arbitrary and void because it permits wasteful uses in the Panhandle field while prohibiting them in other places. (d) It is void because vague and indefinite in allowing utilization of gas for other purposes, including stripping, where "there is no reasonable market available to the owner." (e) It is in violation of article 16, § 59a, Conservation Amendment to the Constitution of Texas, enjoining the Legislature to enact laws to conserve the state's natural resources. (f) If valid, what it means to say is that persons may not strip gas until they have expended money and done everything possible to create a market for light and fuel, and it was not intended, in any event, to permit the stripping of the gas and the blowing of the residue into the air. They deny that the permits from the Commission are effective: (a) Because the proviso is void as a delegation of legislative authority to the Commission, in that it authorizes the Commission generally to determine what uses shall be made of gas, instead of making fact findings as the basis for applying standards fixed by the Legislature. (b) That the proviso undertakes to confer upon the Commission power to suspend the general provisions of article 6008, as amended, requiring gas to be confined to wells until it can be used for

light and fuel. (c) The proviso is in violation of article 16, § 59a, of the state Constitution. (d) If valid, it may not be construed as authorizing the use of gas for stripping operations as now conducted.

In Britain's Case, there was a motion to dismiss for want of indispensable parties, the lessors of defendants and the cotenant of plaintiff. There was a motion, too, to dismiss the entire bill for want of equity on these grounds:

(1) Plaintiff's bill does not show that he is in any way hampered or restrained by the statute and the Commission permits under which defendants are operating, for all that appears plaintiff can do with his gas just what defendants are doing. (2) Plaintiff's attack upon the statute is a collateral attack upon the legislative policy of the state, and that upon the permits a collateral attack upon the findings and orders of the Commission. (3) Plaintiff's bill seeks a futile and useless thing, but one greatly prejudicial to defendants, in that it seeks to prevent defendants, from producing 5,000,000 cubic feet of gas a day from a common pool, from which, on plaintiffs' allegations, more than 1,600,000,000 cubic feet are being daily produced and the most of it wasted, including 1,000,000,000 daily for uses other than for light and fuel, for stripping gasoline, and manufacturing carbon black. To restrain defendants from this small production will not substantially aid plaintiffs, but will deprive defendants, who are without markets for light and fuel, of the use and value of their property, by restraining them from doing what, under express statutory authority, is being generally done by property owners in the field. The defendants in Schafer's Case and in Sneed's made substantially the same motions, with this additional point in Sneed's Case, that he was estopped to complain because his bill shows that he has accepted from the defendants whom he sues, royalties for the uses complained of.

The District Judge thought defendants' point as to parties well taken, but because he thought that the fundamental want of equity on the face of plaintiffs' bills was plain, and that new parties would not mend it, he considered and sustained the motion to dismiss on the merits. In doing so he filed an opinion in which he held in substance: "With reference to the 300,000 acre proviso, (a) that such proviso is neither a local nor a special law under the Texas Constitution. (b) That the statute as amended is not discriminatory; the classification in it is reasonable.

(c) As amended, it is not vague and indefinite, with reference to the meaning of the term 'Reasonable market value for light and fuel available to the owner,'" and the term "utilized for other purposes, including the manufacture of natural gasoline." (d) Article 16, § 59a, the Conservation Amendment, is not self-enacting; but in so far as private property is concerned, it leaves the conservation policy of the state in the hands of the Legislature. (2) With reference to the permit proviso: (a) The statute as amended does not delegate legislative powers to the Commission, or authorize the Commission to suspend laws. (b) The Commission permits are in harmony with the policy in Texas concerning conservation of natural gas. (c) The court cannot substitute its judgment for that of the Commission in determining whether this use of the gas is conducive to public welfare. (3) Since plaintiffs' properties are located in the area to which the statute as amended relates, and they are affected equally with defendants by the statute, they may not complain of it as discriminatory because of its effect upon persons owning property in areas not affected by the amendments. (4) The fact that plaintiff, Sneed, is being paid a royalty on the gas produced from his 300-acre tract presents an insurmountable difficulty in the way of his obtaining any relief. This appeal is from the order dismissing the bills on the merits. All of us think the District Judge was right in the view he took that the presence of additional parties was indispensable to plaintiffs' obtaining the relief they ask. Northern Indiana R. Co. v. Michigan Central R. Co., 15 How. 233, 14 L. Ed. 674; McConnell v. Dennis (C. C. A.) 153 F. 547; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U. S. 77, 80, 41 S. Ct. 39, 65 L. Ed. 145; Shields v. Barrow, 17 How. 130–139, 15 L. Ed. 158.

A majority of this court are of the opinion that the District Court, before proceeding to consider the merits of the case, either in law or in fact, should have required the making of these parties and given opportunity therefor. The majority are of the opinion that the questions at issue above pointed out are of such difficulty and intricacy and some of them of such doubtfulness that they should be decided only after hearing every party interested, and with them all present in court so as to be bound by the decision, whatever it may be. They therefore hold that the case should be reversed, with directions to make the parties, no obstacle thereto appearing.

The writer thinks the District Judge was right, too, in concluding that there was a fundamental want of equity in the bills which the making of new parties could not cure, and that he was right in dismissing them on their merits for that want. Because he thinks the case was well decided, and that to send it back for new parties will be doing a vain thing, the writer will, in a separate opinion, give briefly his reasons for believing that the decree should be affirmed.

Reversed and remanded for other and not inconsistent proceedings.

HUTCHESON, Circuit Judge (dissenting).

I cannot agree with my associates that the absence of indispensable parties requires the reversal of this decree. Such an objection does not go to the court's jurisdiction as a federal court to hear a cause. Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289; [1] Hazeltine Corp. v. White (C. C. A.) 68 F. (2d) 715; Dyer v. Stauffer (C. C. A.) 19 F. (2d) 922; General Inv. Co. v. N. Y. Central R. Co., 271 U. S. 228, 46 S. Ct. 496, 70 L. Ed. 920; Rose v. Saunders (C. C. A.) 69 F.(2d) 339; Edenborn v. Wigton (C. C. A.) 74 F.(2d) 374. It goes to the equity of its proceeding in it. It operates to prevent affirmative action which will adversely affect the rights of absent parties. Com. of Pennsylvania v. West Virginia, 262 U. S. 553, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300; authorities main opinion, supra. It never operates as a technical rule to prevent action which is not to the prejudice of such parties. When, as here, it appears on the face of the record that the making of additional parties will not mend the fundamental defects of a bill, that, should new parties be made, the jurisdiction invoked will not be exerted against them, a court will not make the empty gesture of requiring new parties to be made. It will, by an opinion on the merits, bring the litigation to an end.

My associates think the questions presented for decision are so difficult and doubtful that they ought not to be decided except in a case to which all concerned are parties. I do not think so. It seems to me perfectly plain that the propositions the District Judge advanced in support of the opinion he gave are sound, and well supported by authority. Because I agree in the main with what he said, this opinion will not be greatly extended.

I think that plaintiffs' arguments, powerful and searching as they are, proceed to incorrect conclusions, because based upon a series of incorrect assumptions. The first is that, apart from legislative provisions, the use defendants are making of their land, by taking the gas from it, is a wasteful one and may be enjoined. This assumption is, I think, contrary to the settled law of Texas regarding the taking of oil and gas. That law is, an owner of oil or gas lands may take oil or gas from them, at least for any beneficial use, and the use here is certainly a beneficial one, in any quantity without being subject to judicial restraint at the suit of other land owners. Texoma Natural Gas Co. v. Terrell (D. C.) 2 F. Supp. 168, 170; Ehlinger v. Clark, 117 Tex. 547, 8 S.W.(2d) 666, 667; Hunt v. State (Tex. Civ. App.) 48 S.W.(2d) 466; Champlin Ref. Co. v. Corp. Comm., 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403; Henderson, Inc., v. Railroad Comm. (D. C.) 56 F.(2d) 218, unless he takes it by methods which negligently or wantonly damage or destroy adjoining lands or structures. Comanche Duke Oil Co. v. Texas P. Coal & Oil Co. (Tex. Com. App.) 298 S. W. 554, 556.

In the light of this settled rule of law, I think it cannot be maintained that a court of equity will interfere at the suit of one owner, to prevent the beneficial, though it may be uneconomical, use by another owner, of gas or oil drawn from his land by proper drilling and production methods.

The second erroneous assumption on which plaintiffs' arguments proceed is that the statutes of Texas do now, or ever did, restrain the owner absolutely and at all events from using gas drawn from his wells except for light and fuel. I think this assumption proceeds from an incorrect reading and apprehension of article

---

[1] It is said of an objection to the want of parties—

"This objection does not affect the jurisdiction, but addresses itself to the policy of the court. Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. It is not * * * an inflexible rule, a failure to observe which turns the party out of court, because it has no jurisdiction over his cause; but being introduced by the court itself, for the purposes of justice, is susceptible of modification, for the promotion of those purposes." Elmendorf v. Taylor, 10 Wheat. 152, 166, 6 L. Ed. 289.

6008. What the statute did originally provide, before it was amended to provide for Commission action in connection with it, was that the owner of "any well producing natural gas, *in order to prevent the said gas from wasting by escape*" (italics mine) shall within ten days after encountering such gas confine it in the well until such gas shall be utilized for light and fuel. Rev. St. Tex. 1925, art. 6008. As amended by the 42d Legislature at its First Called Session in 1931 (chapter 26, § 2), this article provided, that the Commission, the statutory conservation agent, could permit the use of gas for repressuring and for any other purposes which it might find, after hearing, practical and conducive to the public welfare. This statute, in some form or other, has been on the books since 1899 (Acts 1899, c. 49), but so far as I am aware, it has not been contended, until in this case, that it had any other legislative purpose than that defined in so many of the statutes against waste, to prevent the escape of gas into the air. The ideas plaintiffs now advance that it had the purpose or effect of limiting the gas to particular economic uses, and particularly that it operates to confer upon landowners the right to regulate the economic uses to which their neighbors in a gas field could put their gas, is not borne out or sustained, in my opinion, by either the statute itself, the practice under it, or the construction of it. In the Henderson Case this very point was carefully considered, and the whole statute was sustained, against the attack that it delegated legislative power to the Commission, on the ground that the statute did not limit to particular uses, but merely limited against waste, and that having in other sections defined what "waste" is, the Legislature committed to the Commission the matter of determining, in each particular instance of use, whether this was or was not, within statutory definition, wasteful.[2] Its third erroneous assumption is that the statutes contain now, as they did when the Henderson Case was decided, a section equivalent to subdivision (j), art. 6014, as amended by Laws 1931 (1st Called Sess.) c. 26, § 1, on which that case turned. "(j) The escape into the open air of natural gas, except as may be necessary in the drilling or operation of a well." The 42d Legislature, at its Fourth Called Session (chapter 2, § 1 [Vernon's Ann. Civ. St. Tex. art. 6014]), amended this subdivision out of the law, as indeed was necessary in accordance with the changed policy of the state in regard to permitting the use of gas for stripping. As the Conservation Statutes now stand, nothing in them declares wasteful the practice plaintiffs seek to enjoin. Nothing in them arbitrarily confines gas to the well until it can be used for light or fuel. Nothing in them gives the owner a right to restrain another owner's beneficial use of his gas. On the contrary, they specifically authorize the use defendants are making.

But these are not all of plaintiffs' erroneous assumptions. A basic error in their attack upon the provisos is the assumption that they were enacted as mere provisos to an existing statute in such manner that the proviso, if invalid, would fall without taking the statute with it. The legislative history of these enactments does not bear out this view.

As it stood when the Henderson Case was decided, it had already been, by an

[2] In that case it is said: "We find in the enactment of article 6008, requiring persons discovering gas in order to prevent its waste by escape, to confine it, and providing for inquiry by the commission into the propriety of an authorization, if found, of other uses, neither unreasonable exertion or prohibited delegation of legislative power. This article, a part of an entire program, is of a piece with the balance of the applicable law. It is designed to and its very terms prevent, either the arbitrary shutting down of gas wells, or the wasteful escape of gas into the air. The statute carefully avoids an express requirement that the gas shall at all events be confined. It orders it confined in order to, and only in order to, prevent its escape by waste. It provides for an orderly and careful inquiry into and determination of the question of fact whether there are other uses than those of light and fuel, to which the gas may be put without permitting waste by escape. It delegates to the body charged with the duty, and informed by experience in its discharge, of conserving the oil and gas resources of the state, the fact determination necessary to release a well. Such delegation to an administrative fact finding body like the Railroad Commission is universally recognized as reasonable, valid and appropriate. Armstrong v. Whitten (D.C.) 41 F.(2d) 241; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Brazeale v. Strength (Tex. Civ. App.) 196 S. W. 247; Trimmier v. Carlton, 116 Tex. 572, 296 S. W. 1070; City of Denison v. Municipal Gas Co., 117 Tex. 291, 3 S.W.(2d) 794." Henderson, Inc., v. R. R. Comm. (D. C.) 56 F.(2d) 218, 221.

amendment of the whole section, made to carry the Commission's permit proviso which was construed in that suit. After that case had decided that article 6008 as it stood (as amended by Laws 1931, 1st Called Sess., c. 26, § 2), construed in connection with subdivision (j) of article 6014, prevented the use of gas for stripping, the 43d Legislature, at its Regular Session (chapter 100, § 1), Senate Bill 92, amended article 6008 as amended by the 42d Legislature, 1st Called Sess., c. 26, § 2, to read as originally enacted with the permit proviso left off, and the 300,000-acre proviso added. As appears from the subsequent act of the same Legislature, this permit proviso was left off by mistake. Section 2 of this act provides that if any section, subdivision, paragraph, clause, or word of the article be held invalid, the remaining portions shall be valid, and (section 3) all laws inconsistent with or in conflict with this law shall be repealed. At the First Called Session of the 43d Legislature (chapter 88), House Bill 199 was enacted under the emergency clause. This bill recited that the failure to include the permit proviso in the earlier enactment was by mistake, and it re-enacted article 6008 so as to read as it now stands (Vernon's Ann. Civ. St. Tex. art. 6008), with the two provisos in it. This act contained no separability provision. Its structure and the circumstances of its enactment make it clear, I think, that it was intended to stand or fall, it does stand or fall, as a whole. If the provisos are not valid, the whole act is invalid, for they so condition and make up the legislative policy of gas conservation, as that it cannot be said that any part of it is separable from the other. If then the provisos, or either of them, are invalid, the statute is. Thus, plaintiffs' suits based on the statute inevitably fail, for if the provisos are valid, defendants are protected by them. If they are invalid, the whole statute falls.

I am already committed by the Henderson Case, to the proposition that the permit proviso is valid. I agree with the District Judge that the other proviso is too. I think, however, that over and above all of these, there are larger reasons for denying the injunctions prayed.

Plaintiffs' argument is directed, as the argument was in the case of Canadian River Gas Co. v. Terrell (D. C.) 4 F. Supp. 222, in regard to the statute under examination there, to maintaining that the Legislature has undertaken, by the statute in question, to change the rule of property heretofore existing in Texas so as to take from the landowner the absolute right to his gas in place and give him, in lieu thereof, a qualified title, subject to his adjoiners' approval of the use he intends to make of his gas. We did not then think it likely that the Legislature had intended, by a public conservation statute, to put such new rules in force as between private owners. I think the argument no more valid here. I think it clear that unless its provisions clearly show that this is intended a statute ought not to be construed as an attempt to change the rule that an owner may take his oil, and gas, though in doing so he may appropriate oil or gas underlying his neighbor's holdings, or may make a beneficial use of his oil or gas which does not coincide with his neighbor's economic views. When, as here, the statutes in question expressly authorize the use plaintiffs seek to have enjoined, it is quite clear to me that federal equity jurisdiction ought not to be exerted to establish a new rule of property, by declaring state statutes evidencing state policy to be invalid without a most clear showing of the existence of an undoubted right and a really threatened and irreparable injury which the injunction of the court may prevent. Pape v. St. Lucie Inlet Dist. & Port Authority Drainage Dist. (C. C. A.) 75 F.(2d) 865, and cases cited.

But there is still more against the exertion of federal equity jurisdiction in this case. Even in a direct attack upon a state statute on the ground that it violates a state Constitution, a federal court will not, in advance of a state court decision on the point, grant an injunction against it, unless its unconstitutionality is perfectly plain. Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105; Kentucky-Tennessee Light & Power Co. v. City of Paris (C. C. A.) 48 F.(2d) 795; Doscher v. Query (D. C.) 21 F.(2d) 521; Utah Power & Light Co. v. Pfost, 286 U. S. 165, 185, 52 S. Ct. 548, 76 L. Ed. 1038. By much the more will it not, in a controversy of this kind, where in a great gas field like this, one owner seeks to enjoin another owner from using his gas for the purpose the Legislature has declared he may use it for, and for which purpose others are using theirs, restrain that use in a collateral attack upon statutes and permits granted by the Commission under the authority of the statutes, on the ground that the statutes and permits authorizing the use

are invalid. Especially will it not do this where to restrain the defendants from using their land under authority of the Commission and under direct statutory warrant, will result, according to plaintiffs' own allegations, in grievously and injuriously depriving defendants, as well as plaintiffs, of gas which, still according to plaintiffs, is being wasted and dissipated through the wells of others, taken under statutory authority, from the same pool.

I think the bills are plainly without equity. I respectfully dissent from the reversal.