TEXAS PANHANDLE GAS CO. v. THOMPSON et al.

No. 539.

District Court, W. D. Texas, Austin Division.

Oct. 7, 1935.

C. C. Mount, of Oklahoma City, Okl., and Morgan, Culton, Morgan & Britain, of Amarillo, Tex., for complainant.

William McCraw, Atty. Gen., and William C. Davis and Archie Gray, Asst. Attys. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

HUTCHESON, Circuit Judge.

A continuation of the controversy which has long been going on in the Panhandle gas field, this litigation has for its background the same familiar figures, the same interests, the same general issues. Canadian River Gas Co. v. Terrell (D. C.) 4 F. Supp. 222; Texoma Natural Gas Co. v. Terrell et al. (D. C.) 2 F. Supp. 168; Texoma Natural Gas Co. v. Railroad Commission (D. C.) 59 F.(2d) 750; Sneed v. Phillips Petroleum Co. (C. C. A.) 76 F.(2d) 785. Here, as before, in the favorable situation of the pipe line companies as to markets for their gas for light and fuel uses, and the unfavorable situation of other well owners who have not markets, may be found the real genesis of the law and order under attack.

All recognize that this is so. All agree that the purpose and the probable effect of the order complained of will be the same as that intended for the orders enjoined in the earlier cases, to require plaintiff, and those situated like plaintiff, to supply part of their needs by purchase from well owners having no markets, by preventing their supplying all of them from their own wells.

Plaintiff insists that the law itself, the order issued under it, and the facts it is applied to, are in substance the same law, the same order, and the same facts as those which were presented and ruled adversely to the Commission in the earlier cases. Defendants deny this. They say that at last they have a law and order which, based on a different situation and exerting different powers, presents a valid exercise of the police power, a valid regulation of the state's natural resources. They claim that the grounds of invalidity successfully urged against the orders in those cases do not apply here, because (a) this one rests upon a finding of waste, and (b) was entered in the exertion of a power to protect correlative rights, not granted to the Commission in the earlier cases, but specifically granted here.

Plaintiff insists that the finding of waste is a fiating, not a fact finding at all, a mere arbitrary conclusion entered without any credible evidence to support it, and flatly contradicted by the admissions and all the evidence in the former cases, and all the credible evidence in this. It points to the fact that it was entered after the order, promulgated by the Commission under its claimed authority to equalize opportunities in the field, had come under attack, as conclusive that it is a mere makeweight fiating, to bolster up the insufficient grounds originally put forth. It insists that the order in form limiting the plaintiff to the use of its market facilities and markets, but in fact designed to appropriate them in part to the use of other well owners not so equipped, was entered and must rest, not upon considerations of preventing waste, but entirely upon those of equalizing one well owner with another, by so limiting the takings from their wells, of those having

markets and market facilities, as to compel them to purchase and take from the wells of those who have neither.

Upon the showing in plaintiff's bill as to the similarity, if not complete identity, of this case with all the others, and that the immediate enforcement of the order against it would either deprive plaintiff's customers, towns and cities, and their people, of the gas they counted on to sustain their civic life, or would put plaintiff to an enormous expense unnecessarily incurred if the law and order were held invalid, a restraining order pending the interlocutory hearing was issued.

The considerations which there prevailed, that no substantial injury could follow a temporary restraint pending hearing, while serious and irreparable inconvenience and loss would certainly follow the refusal to grant it, are urged upon us here in support of plaintiff's application for an interlocutory injunction pending a hearing of the cause on its merits. Defendants insist that the temporary injunction should be denied. They urge that the questioned order was entered to make effective a comprehensive legislative scheme to regulate and control the taking of gas from the field, so as to prevent its waste; that a part of that scheme was to supply a market for light and fuel to owners of wells whose use of their gas for stripping and other wasteful purposes the amended law had prohibited; and that, if the pipe line companies were permitted to supply their requirements from their own wells without sharing their facilities with others, there would result the injustice of depriving well owners without market for light and fuel of right to use their gas, while others with markets were permitted to fully use theirs.

Plaintiff, conceding that this would indeed be the result, insists that, not the situation caused by the present law, but that complained of in Sneed v. Phillips Petroleum Co., supra, caused by the old law, was the unjust one; that the present law prohibits all from wastefully using, enjoins upon all to use, gas nonwastefully; that plaintiff is not now using, and never has used, its gas wastefully, and that those for whose benefit the Commission has enacted its order have the same right in law to use their gas for light and fuel purposes as plaintiff has, if they will, at their own expense, as plaintiff did at its, provide themselves with market facilities and markets. It insists that there is no principle under our law by which the facilities and property of one person may be appropriated by law to the use of another. It declares that an order attended with such results is supported by no presumptions, but, on the contrary, comes heavily burdened with presumptions against it.

In addition to invoking the protection of the Federal Constitution, plaintiff points to and invokes the state statutes (Vernon's Ann. Civ. St. Tex. art. 6049c, § 8) authorizing court review of orders of the Commission and the granting of an injunction (section 10) pending final judgment in that proceeding. Insisting that, whatever may be the correct rule as to the presumptions attending the findings of the Commission and the burden to overthrow them when the Federal Constitution alone is invoked, the statutory burden in a review proceeding is met when a preponderance of the evidence shows the order to be wrong. It reminds us of the state statute providing that, pending the trial of that issue on the merits, one who seeks a review of the Commission's order, may have the status preserved by a temporary decree. Plaintiff, in short, while insisting that viewing this as a constitutional suit it has, on the face of the proceedings and in the state of the record, clearly shown that the order was wrong and cannot stand, and that it should have a temporary decree against it, urges further that, looking at it as a statutory suit as well, it is quite plain that a consideration of the equities requires a stay pending this proceeding for review.

Whether the Legislature may, in the absence of waste and in the interest alone of eliminating abuses, evils, and injustices which it may be claimed the present "law of capture" entails, taking into consideration by means consistent with due process the vested rights of all owners in a field, provide a substitute for the now prevailing rule, we need not now consider, for it has not, in the statute before us, undertaken to do this.

The statute, House Bill No. 266 (Acts Tex. 1935, c. 120 [Vernon's Ann. Civ. St. Tex. art. 6008]), is a comprehensive one, declaring the policy of the state with reference to the conservation of natural gas and the prevention of waste in its production. It classifies gas as sweet and sour, provides the uses to which each

kind of gas may be put, authorizes the zoning of a field for the purpose of its regulation and administration, and directs the Commission in the discharge of the duties imposed and powers conferred, and provides penalties. That it is a waste statute only its declaration of policy[1] makes clear. The specific sections involved here are sections 10 to 19 (Vernon's Ann. Civ. St. Tex. art. 6008, §§ 10 to 19).

Section 10 directs the Commission to prorate and regulate the production of gas from each common reservoir, for the protection of public and private interests, (a) in the prevention of "waste" as defined herein; (b) in the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir to produce and use or sell such gas as permitted in this article. The remaining sections direct when and how ·the Commission shall discharge the duty imposed and exercise the authority conferred in the matter of regulating and prorating the production of gas "from gas wells to be used for light and fuel purposes to which sweet gas may be put under the terms of this article."

These sections provide for the hearing and determination of waste and market demand and for zoning fields. They designate the limits within which restrictions may be imposed, and generally lay out and prescribe the Commission's course in discharging its agency.

Taking it at the best for defendants' claim of authority to enter the order in question, the statute has undertaken to say no more than that, without reference to waste, where there are wells in a field having no market for their production those who have markets may not take their full needs from their own wells. This is very far from either attempting or accomplishing the repeal of the rule of capture and the substitution for it of another rule of taking consistent with vested rights, fair dealing, and due process. This is merely to say what we have said in the Shutdown Case

(Texoma Natural Gas Co. v. Terrell) 2 F. Supp. 168, supra, could not be justly done, that, "in order to hasten the day when pipe line companies would voluntarily purchase from well owners having no markets," the Commission could limit the permissible takings from their wells below their absolute needs.

If, then, as the Commission contends, the Legislature meant to say that, without regard to questions of waste, persons who had provided themselves with markets should, because other well owners had no markets, be prevented the full use of them, the law would on its face be a class law, unjust and partial; and, designed as it would be to take the property of one class to give it to others, would be invalid; a taking of property without due process, a denial of the equal protection of the laws. If, however, as we believe from a reading of the act, the Legislature meant only to provide, as it has for some time been doing in its proration statutes, that, when there was waste attending full actual production from wells having markets, and because thereof it became necessary to restrict that production, this restriction should be so instituted and carried·out as to reasonably and equitably protect the rights of all actual producers, that is, those having markets, in the field, the law is valid, and the question arises on the order. We have all along recognized that it is a necessary result from the rule that production may be restricted to prevent waste; that, when restriction is done, it must be done equitably and uniformly over all of those actually producing for the market. People's Petroleum Co. v. Sterling (D. C.) 60 F.(2d) 1041; Danciger Oil Co. v. Smith (D. C.) 4 F. Supp. 236; Amazon Petroleum Corporation v. Railroad Commission (D. C.) 5 F. Supp. 633. The courts of Texas have recognized it; Danciger Oil Co. v. R. R. Comm. (Tex. Civ. App.) 49 S.W.(2d) 837; Brown v. Humble Oil Co. (Tex. Sup.) 83 S.W.(2d) 935.

We turn then, to the order, inquiring (1) whether there is any evidence that

---

[1] Section 1 (Vernon's Ann. Civ. St. art. 6008, § 1): *Declaration of Policy:* In recognition of past, present, and imminent evils occurring in the production and use of natural gas, as a result of waste in the production and use thereof in the absence of correlative opportunities of owners of gas in a common reservoir to produce and use the same, this law is enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production.

waste is being, or is about to be, committed by the operations the order is aimed at; (2) whether, if there is, the measures taken by the order have a reasonable relation to its prevention; and (3) whether, in the exercise of a sound discretion, the interlocutory injunction should be granted or denied.

The order creates two zones, the eastern and the western. It purports to determine the market demand on the basis of the needs of those having markets, and then to apportion this demand, not among the wells supplying it, but among those wells and the wells of others having no markets. The basis fixed for the apportionment of the allowable to each well is 50 per cent. on the potential of the well, and 50 per cent. on acreage; the acreage factor being taken, not at the number of acres actually owned by each well owner, but at a set figure of 160 acres assumed to be the reasonable drainage area per well.

Plaintiff's affidavits are to the effect that its operations are not now causing, and never have caused, any waste of gas in the reservoir, and that it had not taken, and will for a long time be short of taking, the amount of gas underlying the acreage which it owns. Defendants' affidavits are to the effect that plaintiff's wells have created a low pressure point in the field by large takings there over a period of years, and that, though plaintiff has not taken more gas from the wells than originally underlay all his property, he has taken more gas than originally underlay the wells apportioned under the 160-acre basis fixed by the Commission.

Two of defendants' affidavits are to the effect that the proper way to develop that field would be to drill it closely, so that gas could be taken from wells without undue migration to the point of outlet; that, if all the gas in the field has to travel long distances to get to outlets, much of its pressure will be dissipated and wasted, so that a great deal of it having insufficient pressure for pipe line use will be left in the ground. They do not show that the field is closely drilled; they do not show how undue migration would be diminished or affected by tak-

ing gas which has been coming from plaintiff's wells from other wells in the same vicinity. Their affidavits contain mere general statements that drawing gas to outlets from a long distance is not the best way to produce the field. The act does not provide for, nor does the order give, protection to any undrilled portion of the field, nor does it take anything into consideration except the wells already drilled, and then only for the purpose of dividing production among them.

The order as originally entered contained no reference to or finding on waste. Later an amended order was filed containing a finding that waste was occurring. There was no provision in either order requiring that plaintiff should take gas from wells having no outlet or providing such wells with an outlet. Though it was contemplated that the effect of the order would be to compel plaintiff to supply its needs by other takings than those allowed from its own wells, nothing in the order compels this. On its face then, since the wells it was designed to benefit have no market outlet, it operates, not as a proration, but simply as a reduction order.

It is plaintiff's position that the finding of waste is wholly without support in the evidence; that nothing more appears than a general conclusion that complete drilling of the field would produce a greater ultimate yield. It insists that, if the finding of waste is supported by the evidence, the order the Commission made reducing plaintiff's takings from its wells has no reasonable relation to the prevention of such waste; that it does not provide for either ratable takings or for complete development of the field; it merely operates arbitrarily to reduce plaintiff's takings. It insists, too, that the order is invalid and unreasonable in apportioning the allowable on the basis of the arbitrarily assumed 160 acres instead of on the basis of the actual acreage owned. It argues that these, in connection with all the other facts in the case, conclusively establish that the whole purpose and effect of the order is not to prevent waste, but to divide plaintiff's markets with those who have none,[2] a purpose and effect

---

[2] A very modernistic application of remedial measures to conditions the old nursery rhyme depicts:

"This little pig went to market,
This little pig stayed at home;
This little pig had roast beef for dinner,
This little pig had none."

beyond the sanction of law. It argues especially that, whatever a hearing upon the merits will disclose, and whatever order should be then entered, the equities of the case require that pending the hearing on the merits, its injunction be continued in force.

Defendants, relying on the rule of presumptions in favor of the Commission's order and the reluctance which courts feel to restrain the action of state officers purporting to have been taken within the law, insist that the order should not be restrained. They say that plaintiff has taken a foreshortened view of the matter; that, restricting its gaze to its own operations, it has failed to observe the whole scene in the light of which the order must be read—a scene in which plaintiff's operations are but a small part of the whole. The whole, they say, is a condition of wasteful production referred to in detail in Sneed v. Phillips Petroleum Co. (C. C. A.) 76 F.(2d) 785, which existed in the Panhandle field when under the former law wasteful operations were permitted to be carried on by those who had no markets for their gas for light and fuel. They say that the Legislature, desiring to stop the wasteful uses of the gas, but unwilling to do so without giving the owners of those wells markets for their gas for light and fuel, in lieu of the markets for wasteful uses which the new law would deprive them of, enacted the present law as a complete scheme for regulating waste in the field, and authorized the Commission to make the order it did to carry out that scheme. They say, too, that, viewed entirely from the standpoint of the plaintiff's operations, there is sufficient evidence to support the findings the Commission made of waste and the order they made as having a reasonable relation to preventing it.

We think it perfectly plain that the fact that the Legislature wished to prohibit the use of gases for wasteful purposes, but was unwilling to do so without supplying well owners with markets for their gas for lawful uses, that is, for light and fuel, would not, if it were a fact, be warrant for a law apportioning to the use of these well owners markets and facilities, the private property of others.

We reject, then, the idea that the Legislature, in order to placate those whose wasteful use of gas it was forbidding, intended to take the facilities and property of others to give it to them. We think it plain that the order cannot stand upon such considerations.

When we consider the Commission's order on the alternative ground put forth to sustain it, that the evidence does not overthrow the presumptions attending the finding that plaintiff's operations were wasteful, and its conclusion that the order had a reasonable relation to preventing it, we are in no doubt that plaintiff should have its injunction. For, whatever the ultimate decision on the merits of this case may be after its full development on the law and the facts, we think it plain that, as the matter stands on the record now before us, not to grant the relief prayed for would be an abuse of our discretion, not to do so would result either in depriving the public of gas for which it has contracted and on which it relies, or if plaintiff, complying with the order, undertakes to supplement its takings by connecting with wells of others, it will serve to put plaintiff to great and unnecessary expense if the law be found invalid.

At best for defendants, the authority they seek to exert is greatly disputed and doubtful. The evidence before us greatly preponderates against, if it does not wholly overthrow, their claims. The injury from a refusal to grant the injunction is imminent and great; that from granting it pending the early trial of the issues already provided for, slight and remote. Let the interlocutory order issue.