**TROTWOOD TRAILERS, INC., Appellant v EVATT, Appellee.**

Board of Tax Appeals

No. 3713.  Decided February 26, 1943.

C. A. Garber, Dayton, for appellant.

Thos. J. Herbert, Atty. Gen., Columbus; Aubrey A. Wendt and A. A. Cartwright, Asst. Atty. Generals, Columbus, for appellee.

## OPINION

This cause and matter came on to be heard by the Board of Tax Appeals upon an appeal filed herein by the appellant, above named, under date of April 3, 1941, from an order of the tax commissioner confirming a sales tax assessment theretofore made by said officer against the appellant under date of March 11. 1941. Said cause was heard by the Board of Tax Appeals upon said appeal, upon a motion made and interposed by the appellee to dismiss the same, upon a transcript of the proceedings of the tax commissioner relating to said assessment, upon the evidence offered and introduced by appellant upon the hearing of the case and upon the arguments and briefs of counsel; and the case was submitted to the Board upon the questions of law and fact therein presented.

Upon consideration thereof the Board finds that the appellant is a corporation under the laws of the State of Ohio, and at the times mentioned herein and for sometime prior thereto was engaged in the business of manufacturing and selling automobile trailers at its manufacturing plant and place of business at Trotwood, Montgomery County, Ohio. Sometime in the month of October, 1940. the tax commissioner acting by and through his examiners and other representatives in the Sales Tax Division of the Department of Taxation. made an audit of appellant's sales and business for the period of time between January 1, 1937, and September 30, 1940; and as the result of this audit a deficiency sales tax assessment in

the amount of $845.09 was made against the appellant as a vendor, as provided for by §5546-9a GC, upon which assessment a 15% penalty amounting to the sum of $126.76 was extended. After this sales tax assessment was made and certified to the appellant it filed a petition for reassessment in manner and form as provided for in said section of the General Code; and upon consideration of this petition an adjustment was made by the tax commissioner with respect to the penalty theretofore extended on this assessment with the result that the tax commissioner confirmed said sales tax assessment in the amount of $845.09 and extended thereon a penalty in the sum of $110.51, making a total of $955.60 which was certified to the appellant as the amount of the final assessment and penalty against it. The appeal filed by the appellant herein is from this final order of the tax commissioner.

At the hearing of this case and before any evidence was offered or introduced by appellant in support of its appeal, the appellee through his counsel made and interposed a motion to dismiss appellant's appeal on the stated ground that the notice of appeal filed by the appellant with the Board of Tax Appeals and with the tax commissioner did not set forth the tax assessment and the errors therein complained of by appellant, as required by the then provisions of §5611 GC, relating to appeals made to the Board of Tax Appeals from tax assessments made by the tax commissioner. In this connection it is noted that this section of the General Code, as the same read at the time this appeal was filed and prior thereto, provided, inter alia, as follows:

"Such appeals or applications shall be made by the filing of a written notice to that effect with the board of tax appeals and with the tax commissioner within thirty days after notice of the tax assessment, valuation, determination, finding, computation or order, or correction or redetermination thereof, by the tax commissioner, shall have been given or otherwise evidenced, as required by law. The notice of such appeal or application shall set forth the tax assessment, valuation, determination, finding, computation or order, or the correction or redetermination thereof, complained of, and the errors therein complained of."

Inasmuch as the notice of appeal filed by the appellant in this case merely refers to the sales tax complained of by its serial number and to the total amount thereof, including penalty, and does not otherwise "set forth" such sales tax assessment and the errors therein complained of, it is difficult even on the most liberal construction of the provisions of §5611 GC, above quoted, to sustain this appeal as against the motion of appellee to dismiss the same on the grounds therein stated. See **Collins, Execr., v Millen, 57 Oh St 289, 292; Browne v Wallace, 66 Oh St 57; McRoberts v Lockwood, 49 Oh St 374; Dennison v Talmadge, 29 Oh St 433; Daily, Admr., v**

Dowty, 52 Oh Ap 84, 87; Buffalo Forge Company v Cleveland Steam Fitting & Supply Company, 82 Oh St 199.

In our opinion it is even more difficult to sustain this appeal on the merits of the question made by appellant on the hearing and submission of the case. As to this, it appears that the total amount of the sales tax deficiency assessment in the amount of $845.09 made against appellant, $108.36 represented a sales tax at the applicable rate provided for by §5546-2 GC, on sales of automobile trailers made by appellant during the audit period, above referred to, to residents of the State of Ohio. At the hearing of the case the appellant made no contention with respect to this part of the sales tax assessment made against it, and conceded its liability with respect to the same, together with the statutory penalty thereon. The balance of the sales tax assessment made against appellant amounting to the sum of $736.73 represented a sales tax at the prescribed rate on sales of automobile trailers made by appellant during said period to persons who were nonresidents of the State of Ohio; and with respect to such sales the appellant's contention is that they were made in interstate commerce and that the taxes assessed thereon were in violation of the commerce clause of the Federal Constitution and of §5546-2 GC, which in terms provides that the sales tax levied by this section shall not apply to "sales which are not within the taxing power of this state under the Constitution of the United States".

As to this contention of the appellant, and speaking only with respect to sales made by it to persons who were nonresidents of this state, it appears from the facts in the case as they were given in evidence at the hearing on this appeal, that the appellant in the regular course of its business in the manufacture and sale of automobile trailers, advertised such business in publications having a national circulation, and that as a result of such advertising it received many inquiries from persons residing in states other than Ohio; which inquiries and subsequent correspondence between such several persons and the company resulted, in many cases, in such persons forwarding to the company an order for some particular type of automobile trailer manufactured by the company; which order was usually accompanied by a deposit or a part of the purchase price of the trailer. In each instance it appears that when the manufactured trailer had been completed in accordance with the order of the customer the company sent to such customer a bill of sale for the trailer, which bill of sale apparently enabled the customer to secure a license for such trailer and license plates therefor in his home state; after which time the customer driving his own automobile bearing his home state license plates, came to the manufacturing plant and place of business of the appellant at Trotwood, Ohio, and there completed the transaction for the purchase of the trailer by paying to the appellant the balance due on the contract price of the trailer either in cash or by satisfactory note or notes

which were cashed in by the company through one or more finance companies with which it did business. After this transaction for the sale and purchase of the trailer was thus completed the trailer was turned over to the purchaser who, either by himself or with the aid and assistance of employees of the company, hooked the trailer on to the automobile of the purchaser, who thereupon drove away with the trailer.

The facts in this case as to the manner in which the appellant sold and delivered its trailers to out-of-state purchasers appear from the evidence of one of the officers given at the hearing of this case. And it is clear from the facts thus developed that in each instance the transaction for the sale of the trailer by the appellant to the purchaser was wholly completed before there was any transportation or other movement of the trailer on its way from appellant's factory and place of business in Trotwood, Ohio, to its destination in the home state of the purchaser or to such other place as the same might be taken by such purchaser. In the second place, it likewise fairly appears from the facts in this case that in each instance the purchaser at the time the transaction for the purchase and sale of the trailer was completed in the manner above indicated, contemplated a removal of the trailer from appellant's factory and place of business in this state to his home state either directly or at some later time; although as to this, it is obvious that after the sale of the trailer was thus completed it was not a matter of any interest to the appellant as to what disposition the purchaser made of the trailer or whether he took the same back to his home state or to some point in the State of Ohio, for that matter.

In this situation as to the facts as they fairly appear from the evidence in this case, it is noted that §5546-2 GC, provides that for the purposes therein stated "an excise tax is hereby levied on each retail sale made in this state of tangible personnal property" at the graduated rates therein specified. This section provides certain exemptions from the sales taxes imposed by this section and, in this connection, more particularly provides, so far as this case is concerned, for the exemption herein above referred to. By §5546-1 GC, the term "retail sale" includes all sales with certain exceptions which are not important so far as this case is concerned. And by this section the terms "sale" and "selling" include all transactions whereby title or possession, or both, of tangible personal property, is or is to be transferred, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange or barter and by any means whatsoever. In this case it is not doubted that the sales here in question were of tangible personal property at the factory or place of business of the appellant at Trotwood, Ohio; and aside from the claim made for the exception or exemption above referred to, no contention is made by appellant that the sales of the trailers manufactured and sold by it in the

manner indicated by the facts in this case, would not otherwise be subject to the taxes imposed by §5546-2 GC.

As above indicated, the contention of appellant in this case is that the sales here in question are "sales which are not within the taxing power of this state under the Constitution of the United States"; and, as to this, appellant further contends that the sales taxes assessed by the tax commissioner on the sales here in question are taxes on interstate commerce and are for that reason void under the Federal Constitution, and are excepted from the incidence of the taxes imposed by §5546-2 GC. As to the contention here made by the appellant, it is noted that although in each instance the contract for the purchase and sale of the trailer, evidenced by the order of the prospective purchaser and the acceptance thereof by the appellant company, was negotiated by correspondence between the purchaser in his home state and the appellant at its office and place of business at Trotwood, Ohio, the actual sale of such trailer was in each case made and completed at Trotwood where the property sold was then situated. Touching the question thus presented the following is said in 12 Corpus Juris at page 27:

"A completed contract of sale between residents of a state is not a transaction of interstate commerce, nor is a contract between citizens of different states. when the contract is made and delivery accepted in the state where the property is situated, although the buyer intends to ship the property outside the state."

Moreover. the fact that the purchaser at the time the transaction for the sale of the trailer to him was completed by his payment of the balance of the purchase price on such trailer. contemplated the removal of the trailer to his place of residence in another state or to some other point outside of Ohio, is wholly immaterial with respect to the power and authority of the State of Ohio to impose a tax on the sale of the trailer. In the case of State of Minnesota v Blasius, 290 U. S. 1, 9, 78 L. Ed. 131, 136. it was held:

"If the interstate movement has not begun. the mere fact that such a movement is contemplated does not withdraw the property from the state's power to tax it." Coe v Errol, 116 U. S. 517, 29 L. Ed. 715; Diamond Match Company v Ontonagon, 188 U. S. 82, 47 L. Ed. 394.

Supporting the proposition that a commodity does not become the subject of interstate transportation so as to preclude taxation by the state merely by reason of the fact that the owner intends to transport it to another state, the following cases, in addition to those above referred to, are here noted: Turpin v Burgess, 117 U. S. 504, 29 L. Ed. 988; Carrier v Gordon, 21 Oh St 605; Ayer & L. Tie Company v Keown, 122 Ky. 580, 93 S W. 588; Miles v Baltimore Company, 83 Md. 385, 35 Atl. 144; State v Taber Lumber Company, 101 Minn. 186. 112 N. W. 214. See United Mills Company v Tax Commission, 54 Oh Ap 1.

In this connection, it may be conceded, perhaps, that if a person is engaged in the business of purchasing commodities in one state for transportation into another state by railroad or other like means, the purchase of such commodities may in such case be interstate commerce as much as is the transportation of such commodities. Dahnke-Walker Milling Company v Bondurant, 257 U. S. 282, 66 L. Ed. 239; Lempke v Farmers Grain Company, 258 U. S. 50, 66 L. Ed. 458. However, on the facts of this case, the question here presented is ruled, we believe, not by the cases just cited or by other cases that might be cited on this precise point, but is controlled by the principles noted in the cases of Coe v Errol, 116 U. S. 517, 29 L. Ed. 715; Diamond Match Company v Ontonagon, 188 U. S. 82, 47 L. Ed. 394; and Bacon v Illinois, 227 U. S. 504, 57 L. Ed. 615. In the case of Coe v Errol, supra, the question presented was therein stated as follows: "Are the products of a State, though intended for exportation to another State, and partially prepared for that purpose by being deposited at a place or port of shipment within the State, liable to be taxed like other property within the State? Does the owner's state of mind in relation to the goods—that is his intent to export them, and his partial preparation to do so—exempt them from taxation? This is the precise question for solution." In this case it was decided—to use the language of the court in the later case of Turpin v Burgess, supra, in which the case of Coe v Errol was referred to—, "that goods intended for exportation to another State are liable to taxation as a part of the general mass of property of the State of their origin until actually started in course of transportation to the State of their destination, or delivered to a common carrier for that purpose; provided they are taxed in the usual way in which such property is taxed, and not taxed by reason or because of such exportation, or intended exportation, and that the carrying of them to and depositing them at a depot for the purpose of transportation is not part of that transportation". Speaking of its decision in the case of Coe v Errol, the Supreme Court of the United States in its opinion in the case of Bacon v Illinois, supra, said:

"In Coe v Errol, 116 U. S. 517, the question was whether the products of a State, in that case timber cut in the forests of New Hampshire, though intended for exportation to another State and partially prepared for that purpose by being deposited at a place or port of shipment, were liable to be taxed like other property within the State. The claim of immunity by reason of the fact that it was owned by nonresidents was at once disposed of. 'If not exempt from taxation for other reasons,' said the court (Id., p. 524), 'it cannot be exempted by reason of being owned by non-residents of the State. We take it to be a point settled beyond all contradiction or question, that a State has jurisdiction of all persons and things within its territory which do not belong to some other jurisdiction.' The case was put upon the same basis as though the tim-

ber had been owned by residents of New Hampshire, and the question was treated as being one with respect to the point of time at which goods produced within the State, which are the subject of exportation to another State, ceased to be liable to State taxation. It was concluded that these articles could be taxed by the State until, but not after, they had been actually started in the course of transportation to another State or had been committed to a carrier for that purpose."

In the case of Diamond Match Company v Ontonagon, supra, the Supreme Court of the United States had under consideration this question on facts similar to those presented in the case of Coe v Errol; and a like conclusion was reached. In the case of Bacon v. Illinois, supra, the court held that: "The test of exemption from state taxation is not citizenship of the owner but whether or not the articles attempted to be taxed are actually moving in interstate commerce." In this case it was further held: "Property brought from another state and withdrawn from the carrier and held by the owner with full power of disposition becomes subject to the local taxing power notwithstanding the owner may intend to ultimately forward it to a destination beyond the state."

In the case of **Carrier v Gordon, Treas., 21 Oh St 605,** it was held:

"Tangible personal property situate in the state, and liable to taxation, does not become exempt from such liability by the fact that it has been purchased from the owner by a non-resident, with intention of transporting it beyond the state, and is merely awaiting the necessary opening for navigation, but has not in fact been started on its transit."

The view that the tax commissioner had the legal power and authority to levy sales taxes on the sales here in question, is supported, we believe, by the decision of the court in the case of Superior Oil Company v Mississippi, 280 U. S. 390, 74 L. Ed. 504. This was an action by the State of Mississippi v the Superior Oil Company as a vendor and distributor of gasoline to recover excise taxes on gasoline sold by said company to certain packers in the City of Biloxi in that state; which gasoline was purchased by the packers for transportation by them to the State of Louisiana where it was to be delivered to shrimp fishermen for use in fishing. The fishermen brought the shrimp caught by them back to Biloxi where they sold it to the packers, who then charged them with the cost of the gasoline. The court, in sustaining the right of the State of Mississippi to impose and collect the gasoline taxes there in question, said:

"The importance of the commerce clause to the Union, of course, is very great. But it also is important to prevent that clause being used to deprive the states of their life-blood by a strained

interpretation of facts. We may admit that this case is near the line. There was a regular course of business known to the appellant, that took the gasoline into another state, and if by mutual agreement the oil had been put in the hands of a third person, a common carrier, for transportation to Louisiana, the mere possibility that the vendor might be able to induce the carrier to forego his rights might not have been enough to keep the transaction out of interstate commerce. A. G. Spaulding & Bros. v Edwards, 262 U. S. 66, (a case of foreign export, see Sonneborn Bros. v ·Cureton, 262 U. S. 506, 520, 521). But here the gasoline was in the hands of the purchaser to do with it as it liked, and there was nothing that in any way committed it to sending the oil to Louisiana except its own wishes. If it had bought bait for fishing that it intended to do itself, the purchase would not have been in interstate commerce because the fishing grounds were known by both parties to be beyond the state line. A distinction has been taken between sales made with a view to a certain result, and those made simply with indifferent knowledge that the buyer contemplates that result. Louisville and Nashville R. R. Co. v Parker, 242 U. S. 13, 14, Kalem Co. v Harper Bros., 222 U. S. 55, 62."

Following the decision of the United States Supreme Court in the case of Superior Oil Co. v Mississippi, supra, and relying on this case as an authority for its decision, the Supreme Court of the State of Illinois in the case of Superior Coal Company v Department of Finance, 377 Ill. 282, 36 N. E. (2d) 354. 361, held that sales of coal made by a coal company to a railroad company at the coal company's mines in the State of Illinois, were taxable under the Retailers' Occupation Tax Act of that state, although the coal when the same was delivered by the coal company into the cars of the railroad company at such mines was intended by the railroad company as the purchaser of the coal to be transported out of the State of Illinois for use by the railroad company in other states. Quoting the provision in the applicable tax law of that state that the tax thereby imposed "is not imposed upon the privilege of engaging in any business in interstate commerce or otherwise. which business may not, under the Constitution and statutes of the United States, be made the subject of taxation by this State", the court said:

"It is undisputed that all of the coal sold by the plaintiff to the railway company is loaded into the latter's cars on its tracks at its mines near Gillespie. The railway company, it thus appears, obtains complete possession of the coal in its cars in Illinois at the mines. It is immaterial that coal mined and delivered to the railway company in this State was intended for use beyond the territorial boundaries of Illinois. Here. the fact that a portion of the coal delivered to the railway company (was) used in other States is of no greater significance, within the contemplation of the Retailers' Occupation Tax Act, than the fact that wearing ap-

parel purchased in Illinois may later be worn in Florida or California. As the late Mr. Justice Holmes of the United States Supreme Court pointedly observed in Superior Oil Co. v Mississippi, 280 U. S. 390, 50 S. Ct. 169, 170, 74 L. Ed. 504: 'Here the gasoline was in the hands of the purchaser to do with as it liked, and there was nothing that in any way committed it to sending the oil to Louisiana except its own wishes. If it had bought bait for fishing that it intended to do itself, the purchase would not have been in interstate commerce because the fishing grounds were known by both parties to be beyond the State line.' The inescapable fact is, as urged by the defendant, that the railway company took possession of the coal at the mines as purchaser, and not as a mere bailee. No duty rested upon the plaintiff to ship coal beyond the boundaries of Illinois in order to complete its contract of sale."

Likewise, in the case of Treasury of Indiana v Wood Preserving Corp., 313 U. S. 62, 85 L. Ed. 1188, 1193, it was held that sales of ties made by the Wood Preserving Corp. in the State of Indiana to a railroad company were taxable under the Gross Income Tax Act of that state to the extent of, and measured by the gross receipts from such sales, although the ties thus sold and delivered to the railroad company were immediately loaded on railroad cars for shipment to the State of Ohio for creosote treatment. Referring to the transactions by which the Wood Preserving Corp. obtained the ties which were later sold by it to the railroad company, the court said:

"The fact that the ties which were sold to the Railroad Company were purchased by respondent through orders given to the Indiana producers from respondent's Marietta office cannot affect the authority of Indiana to tax the receipts from interstate activities of the respondent in its dealings with the Railroad Company: Woodruff v Parkham, 8 Wall. (U. S.) 123, 140, 19 L. Ed. 382, 387; Banker Bros. Co. v Pennsylvania, 222 U. S. 210, 56 L. Ed. 168, 32 S. Ct. 38; Wiloil Corp. v Pennsylvania, 294 U. S. 169, 175, 79 L. Ed. 836, 840, 55 S. Ct. 358."

The court in its opinion in this case further said:

"As to these dealings, it appears that respondent received in Indiana the ties it purchased from the local producers and that respondent sold and delivered these ties in Indiana to the Railroad Company. The fact that the delivery by the producers to respondent and respondent's delivery to the Railroad Company took place at the same time is not important. Respondent was in Indiana acting through its agent at the designated points on the railroad line. The Railroad Company was at the same points represented by its inspector. The ties brought there by the producers were then examined and those found by the inspector to be in accordance with.

specifications were accepted. In these transactions, respondent through his agent at once accepted from its vendors the ties which the Railroad Company found satisfactory and then and there sold and delivered these ties to the Railroad Company. These were local transactions.—sales and deliveries of particular ties by respondent to the Railroad Company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the Railroad Company at the Ohio plant, and the ties bought by the Railroad Company in Indiana. as above stated, were transported and delivered by the Railroad Company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence in the light of facts showing the completed delivery to the Railroad Company in Indiana. See Superior Oil Co. v Mississippi, 280 U. S. 390, 74 L. Ed. 504, 50 S. Ct. 169."

Referring to the sales of automobile trailers made by the appellant company in manner as above stated, it must be said that inasmuch as such sales were in each instance completed at Trotwood, Ohio, where the property sold was then located. and before such trailer was moved in transit to the home state of the purchaser or elsewhere outside of this state, the authorities above noted support the view that the taxes assessed by the tax commissioner on such sales did not offend against the commerce clause of the Federal Constitution and were not. therefore, within the above noted exemption provided for by §5546-2 GC. It is, therefore, by the Board of Tax Appeals considered and ordered that appellant's appeal be, and the same is hereby denied; and that the sales tax assessment complained of in said appeal be, and the same hereby is affirmed.

BOARD OF TAX APPEALS.